## Commonwealth, Appellant, *v.* Danville Bessemer Company.

*Corporations—Foreign corporations—Bonus on capital stock—Act of May 8, 1901, P. L. 150—Statutes.*

The intent of the Act of May 8, 1901, P. L. 150, imposing a bonus upon foreign corporations is to affect only those foreign corporations which after the passage of the act locate their chief place of business or bring and actually employ any part of their capital wholly within the state.

A statute must always be interpreted so as to operate prospectively, and not retrospectively, unless the language is so clear as to preclude all question as to the intention of the legislature.

Argued June 2, 1903. Appeal, No. 8, May T., 1903, by plaintiff, from judgment of C. P. Dauphin Co., Commonwealth Docket 1902, No. 164, on appeal from tax settlement in case of Commonwealth v. Danville Bessemer Company. Before MIT-CHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Appeal from tax settlement.

Trial by court without a jury under the Act of April 22, 1874, P. L. 109.

WEISS, P. J., found the facts to be as follows:

The defendant company was incorporated under the laws of the state of New Jersey, August 18, 1899, for the purpose of manufacturing iron and steel.

2. Prior to the approval of the Act of May 8, 1901, P. L. 150, upon and according to the provisions of which the claim of the commonwealth is founded, the company brought its capital, or a part of it, into this state and invested it in the purchase of a blast furnace and rolling mill plant and engaged in the manufacture of iron and steel.

3. The authorized and paid in capital stock of the company is $360,000 which was issued " wholly in pursuance of authority conferred by the state of New Jersey."

4. It made report under date of July 20, 1901, accompanied with a protest of July 26, 1901, against liability to pay a bonus or make report, in which it sets forth that its chief office in

this state is located in the city of Philadelphia; that it has no bonded indebtedness; that the amount of capital wholly employed here is "cash, $140,000; property value to make up balance of capital stock is conjectural;" and in addition and for the information of the auditor general, that the capital invested in Pennsylvania is "in cash $140,000; in manufacturing works the balance," and that the property located in this state consists of a blast furnace, rolling mill plant and tenement houses, "all arbitrarily valued at $250,000." From the affidavit of the company, which was offered and received in evidence without objection, it is made to appear that "the amount in value of the company's capital actually invested or employed in Pennsylvania has not at any time since the passage of the act of May, 1901, exceeded $250,000," though the statement in the report that the capital invested was $140,000 in cash and the balance in manufacturing works, fully justified the accounting officers in assuming that the amount thereof employed wholly in the state was $390,000.

5. The auditor general and state treasurer settled an account against the company April 18, 1902, in which they charged it with one third of one per cent on $390,000, or $1,300, from which an appeal was taken June 10, 1902, and various specifications of objection filed thereto.

6. The defendant belongs to a class of companies incorporated under the laws of another state, authorized by the provisions of the Act of June 9, 1881, P. L. 89, and the act amendatory of it approved June 16, 1893, P. L. 466, to take, have and hold real estate necessary for corporate purposes, and erect manufacturing establishments within this commonwealth.

7. The company complied with the provisions of the Act of April 22, 1874, P. L. 108, entitled "an Act to prohibit foreign corporations from doing business in Pennsylvania without having known places of business and authorized agents," and the certificate of the secretary of the commonwealth is exhibited as by the terms of said act is required.

8. The defendant has not, since the passage of the act of May 8, 1901, made any additional investment of capital in Pennsylvania or employed in said state any amount in addition to that which was invested and employed prior to the passage of the act of May 8, 1901,

9. Defendant has no bonded indebtedness, and the capital employed by it in Pennsylvania was derived from capital stock alone and no part of it is or was borrowed money.

10. Defendant makes annually to the auditor general returns of its capital stock and pays thereon annually the same tax as is imposed upon corporations organized for similar purposes under the laws of Pennsylvania.

11. The amount of capital employed by defendant in Pennsylvania was not greater than corporations of the same kind organized under the laws of this state are entitled to employ.

12. The commonwealth seeks to recover a bonus of one third of one per centum upon the capital actually employed by the company in Pennsylvania, and rests its claim and right to do so upon the Act of May 8, 1901, P. L. 150.

The court after citing Com. v. Erie & Western Transportation Co., 107 Pa. 112, and Com. v. American Car & Foundry Co., 203 Pa. 302, decided that the right to recover the bonus must be denied to the commonwealth.

Judgment was accordingly entered for defendant. Commonwealth appealed.

*Error assigned* was the judgment of the court.

*Hampton L. Carson,* attorney general, with him *Frederic W. Fleitz,* deputy attorney general, for appellant.—The act is not a retroactive statute. A license to a foreign corporation to enter a state does not involve a permanent right to remain. Subject to the laws and constitution of the United States, full power and control over its territory, its citizens and its business, belong to the state : Rector, etc., of Christ Church v. Philadelphia, 65 U. S. 300 ; Doyle v. Continental Ins. Co., 94 U. S. 535 ; Phila. Fire Assn. v. New York, 119 U. S. 110 (7 Sup. Ct. Repr. 108).

There is no contract between the foreign corporation and the commonwealth which is violated by the act of May 8, 1901 : Milsom Rendering & Fertilizer Co. v. Kelly, 10 Pa. Superior Ct. 565 ; Hagerman v. Empire Slate Co., 97 Pa. 534 ; Com. v. Del. Division Canal Co., 123 Pa. 625 ; Com. v. Erie & Western Transportation Co., 107 Pa. 112.

*M. E. Olmstead,* with him *A. C. Stamm,* for appellee.—There

is an essential distinction between a tax and a bonus. The legislative power of taxation is limited only by its own sovereignty; a bonus implies a consideration for something conferred, and where the corporation receives nothing beyond what it.possessed by its charter, the .legislature cannot exact additional consideration: Com. v. Erie & Western Trans. Co., 107 Pa. 112; Com. v. Bailey, Banks & Biddle Co., 20 Pa. Superior Ct. 210.

The act of 1901 does not apply to capital invested prior to its passage: Com. v. American Car & Foundry Co., 203 Pa. 302; Taylor v. Mitchell, 57 Pa. 209; Peoples' Fire Ins. Co. v. Hartshorne, 84 Pa. 453; Sproul v. Standard Plate Glass Co., 201 Pa. 103. If the act of 1901 requires the payment of a bonus by defendant upon or in respect of capital invested in Pennsylvania prior to its passage, it impairs the obligation of contracts: Memphis, etc., R. R. Co. v. Railroad Commissioners, 112 U. S. 609 (5 Sup. Ct. Repr. 299); Dartmouth College Case, 4 Wheat. 518; Com. v. Erie & Western Transportation Co., 107 Pa. 112; Providence Bank v. Billings, 4 Peters, 514; Wolff v. New Orleans, 103 U. S. 358; New Jersey v. Wilson, 7 Cranch, 164; Houston & Texas Central Ry. Co. v. Texas, 170 U. S. 243 (18 Sup. Ct. Repr. 610); Green v. Biddle, 8 Wheat. 1.

OPINION BY MR. JUSTICE BROWN, January 4, 1904:

In affirming this judgment but little need be said. The claim of the commonwealth is for a bonus of one third of one per centum upon the amount of the capital of the Danville Bessemer Company, a foreign corporation, employed within this state. It is made under the Act of May 8, 1901, P. L. 150, the first section of which is, " That from and after the passage of this act all corporations, limited partnerships or joint stock associations, except foreign insurance companies, chartered or created by or under the laws of any other State, or of the United States, or of any foreign country, whose principal office or chief place of business is located in this commonwealth, or which have any part of their capital actually employed wholly within this State, in addition to complying with the laws now in force as to such corporations, limited partnerships or joint-stock associations, shall pay to the State Treasurer, for the use of the

commonwealth, a bonus of one-third of one per centum upon the amount of their capital actually employed or to be employed wholly within the State of Pennsylvania, and a like bonus upon each subsequent increase of capital so employed." Before the passage of this act the appellee came into Pennsylvania, conducted business and employed that part of its capital from which the commonwealth would exact a bonus. It may fairly be said that, by our legislation, the company had been encouraged, if not actually invited, to come among us; and, by complying with the statutory conditions of its coming, had paid the only consideration asked by the state for the privilege of doing so.

What the state is demanding from the appellee is not a tax, which it could impose, but a bonus, which is a consideration for the grant of a privilege or franchise: Commonwealth v. Erie and Western Transportation Co., 107 Pa. 112. The privilege extended to the appellee by the state, and exercised by it before the passage of the act of 1901, was to conduct business here. If the legislature could, it is hardly likely that it would, attempt to impose a bonus upon a foreign corporation already doing business here, and for which privilege it had already done all that the state had asked; and it is plain that the act of 1901 is not such a legislative attempt.

"Nothing short of the most indubitable phraseology is to convince us that the legislature meant their enactment to have any other than a prospective operation: " Dewart v. Purdy, 29 Pa. 113. "There is no canon of construction better settled than this, that a statute shall always be interpreted so as to operate prospectively and not retrospectively, unless the language is so clear as to preclude all question as to the intention of the legislature: Neff's Appeal, 9 Harris, 243; Fisher v. Farley, 11 Id. 501; Becker's Appeal, 3 Casey, 52. Lord BACON expressed concisely the same rule: Neque enim placet Janus in legibus. Retrospective laws generally if not universally work injustice, and ought to be so construed only when the mandate of the legislature is imperative: " Taylor v. Mitchell, 57 Pa. 209. "Unless such intent is clearly manifest, it will not be presumed that the legislature intended any other than a prospective operation: " Peoples' Fire Ins. Co. v. Hartshorne, 84 Pa. 453. Tested by this rule of construction, there is noth-

ing in the first section of the act of 1901 to indicate the clear legislative intent that it should apply to corporations then employing their capital within the state. The bonus is to be paid by corporations, " from and after the passage " of the act, " whose principal office or chief place of business is located in this commonwealth," that is, corporations which locate their principal office or chief place of business here, and not those which have located it; or corporations " which have any part of their capital actually employed wholly within this state," that is, corporations which, after the passage of the act, actually employ any part of their capital wholly within this state, and not those which theretofore employed it. The words cannot be read as the " clear " and " indubitable " language of the legislature intending the act to operate retrospectively. By transposing " from and after the passage of this act " and reading this clause after the words " whose principal office or chief place of business is located in this commonwealth, or which have any part of their capital actually employed wholly within this state," the legislative intent becomes manifest that the act is to affect only those foreign corporations which, after its passage, locate their chief place of business or actually employ any part of their capital wholly within the state. Such transposition can be made and the section so read, unless by so doing a clearly expressed intention of the legislature to the contrary will be struck down.

If there were any doubt as to the intent of the legislature that the act should operate only upon corporations coming into the state or bringing capital into it after May 8, 1901, the second section would remove it. It provides " that in addition to the duty of complying with the other laws now in force, no corporation, limited partnership or joint-stock association liable to pay bonus under this act shall go into operation or transact any business in this Commonwealth without having first made a report under oath to the Auditor General stating, specifically : First. The state or country in which incorporated or created. Second. The date of incorporation or organization. Third. The location of its chief office in this State. Fourth. The name and address of its president and treasurer. Fifth. The amount of its bonded indebtedness. Sixth. The amount of its authorized capital stock, Seventh, The amount of capital paid in.

Eighth. The amount of capital employed wholly in the State of Pennsylvania. And each of said corporations, limited partnerships or joint-stock associations shall make a similar report annually thereafter, not later than the thirtieth day of November of each year."

In an inquiry as to legislative intent the different parts of the act of assembly must be read together, and, in so reading the first and second sections here, it appears from the indubitable words of the latter that the foreign corporations in the mind of the legislature at the time this act was passed were such only as thereafter should go into operation or transact any business in this state. The appellee brought no part of its capital here after the passage of the act, and what the court below decided was that the capital which it had previouly brought and actually employed wholly within the state, was exempt from the bonus which the commonwealth would compel it to pay. This was a correct view, and the judgment that followed it in favor of the defendant.is affirmed.