Commonwealth, Appellant, *v.* Bayuk Cigars, Inc.

Argued January 12, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and JONES, JJ.

*David Fuss,* Deputy Attorney General, with him *T. McKeen Chidsey,* Attorney General, for appellant.

*James J. Dougherty,* with him *John R. Scholl, Jerome J. Rothschild, Scholl & Dougherty* and *Fox, Rothschild, O'Brien & Frankel,* for appellee.

OPINION BY MR. JUSTICE JONES, April 22, 1948:

This is an appeal by the Commonwealth from a judgment entered against it by the court below in favor of the defendant, Bayuk Cigars, Inc. (hereinafter called Bayuk), a corporation organized and existing under the laws of the State of Maryland. The corporation maintains its principal office and place of business in Philadelphia, Pennsylvania, where it is engaged in the manufacture and sale of cigars and tobacco products, in which business it employs a relatively large amount of capital in Pennsylvania. For the privilege of doing business within the State, the Act of May 8, 1901, P. L. 150, Sec. 1, 72 PS §1851, requires that "all [foreign] corporations, limited partnerships or joint-stock associations" (with some few exceptions not presently material) pay into the State Treasury for the use of the Commonwealth "a bonus of one-third of one per centum upon the amount of their capital actually employed or to be employed wholly within the state of Pennsylvania, and a like bonus upon each subsequent increase of capital so employed".[1]

---

[1] Sec. 1 of the Act of 1901, cit. supra, provides as follows:

"From and after the passage of this act all corporations, limited partnerships or joint-stock associations, except foreign insurance companies, chartered or created by or under the laws of any other state, or of the United States, or of any foreign country, whose

The question here involved is whether the value of Bayuk's capital, employed or to be employed within the State, as determined by the State's fiscal officers for the year 1941, was made to include property not amenable to local governmental requirements because of the exclusion of such property from the indicated liability by virtue of certain provisions of the Federal Constitution. The facts of the case, which for the most part are agreed upon in a stipulation of the parties, in all are undisputed.

In its foreign bonus report for the year 1941, Bayuk stated the value of its capital employed or to be employed in Pennsylvania in a certain amount after having included therein the value of imported tobacco in original and unbroken packages stored in the company's plant in Pennsylvania. Inasmuch as the total capital value so reported was greater than the greatest amount previously reported upon which a bonus had been paid, the company, simultaneously with the filing of its 1941 report, paid into the State Treasury for the use of the Commonwealth an additional sum covering the statutorily prescribed percentage of the excess capital value thus reported. Subsequently, the State's fiscal officers redetermined the amount of Bayuk's bonus liability for 1941 by adding to the company's foreign corporation report for that year the value of imported tobacco in original and unbroken packages stored in United States Government bonded warehouses, located in Pennsylvania, upon which the import duties remained unpaid but the title whereto was in Bayuk. On that basis, the company's

---

principal office or chief place of business is located in this Commonwealth, or which have any part of their capital actually employed wholly within this state, in addition to complying with the laws now in force as to such corporations, limited partnership or joint-stock associations, shall pay to the state treasurer, for the use of the commonwealth, a bonus of one-third of one per centum upon the amount of their capital actually employed or to be employed wholly within the state of Pennsylvania, and a like bonus upon each subsequent increase of capital so employed."

bonus liability was determined in a still larger sum. Bayuk thereupon applied to the Department of Revenue for a resettlement of its bonus report on the ground that the values of the imported tobacco in original and unbroken packages both at its plant, which the company had voluntarily included in the report, and in the Government bonded warehouses, which the State's fiscal officers had added to the report, were erroneously included in the item, "Net Book Value of Greatest Amount of Capital in Pa. at any one time during the year". Upon the Department's refusal of the company's application for a resettlement, the latter petitioned the Board of Finance and Revenue for a review which was also refused. The company then appealed the bonus determination to the Court of Common Pleas of Dauphin County where the issue was tried by the court without a jury upon agreement of the parties under the Act of April 22, 1874, P. L. 109, 12 PS §688; and, in due course, the judgment from which this appeal was taken eventuated.

In giving judgment for Bayuk (the defendant in the appeal proceeding), the learned court below, relying with avowed confidence on the case of *Hooven & Allison Co. v. Evatt*, 324 U. S. 652, held (1) that the tobacco in its original and unbroken packages was still in foreign commerce and that, consequently, to the extent the bonus was calculated on the value of such tobacco, the determination placed a burden upon foreign commerce in violation of Article I, Section 8(3) of the Constitution of the United States and (2) that the tobacco packages, while so remaining in foreign commerce (even at destination in Pennsylvania) continued to be imports upon which the bonus, figured on such tobacco's value, constituted "a direct burden upon imports, in violation of Article I, Section 10(2) of the Constitution of the United States".

The learned trial judge in his conclusions of law inadvertently bottomed both of the imputed violations

upon the same constitutional provision. It is implicit, however, from a reading of the lower court's discussion that, when it speaks of the tobacco's not having left foreign commerce, the relative violation accordingly ascribed was, if anything, a violation of the "Commerce Clause", viz., Article I, Section 8(3) of the Constitution. We mark the apparent confusion merely in aid of a clearer understanding of the situation, for the distinction is really of no present moment. Both grounds of constitutional invalidity, so reckoned with by the learned court below, fundamentally stem from the same concept, namely, the fictional situation legally supplied by the "original package" idea, first developed by Chief Justice MARSHALL in *Brown v. Maryland,* 12 Wheaton 419 (1827), and ever since scrupulously observed by the courts of this country,—a concept which assigns to an import, while still "in the original form or package in which it was imported" or "until put to the use for which it was imported", a situs elsewhere than among the common goods of the State in which the imports happen at the time to be. In the one instance, the invalidity found by the court below was because the bonus involved a direct violation of the constitutional prohibition (Art. I, Sec. 10 (2)) against a State's laying "any Imposts or Duties on Imports . . ." (without the consent of Congress), while in the other instance the alleged error in the bonus was due to the fact that the tobacco, being in "foreign commerce", was technically not within the State and, therefore, not subject to the express provisions of the Act of 1901, cit. supra.

The learned court below fell into fundamental error by restricting itself to reasoning on a parity from *Hooven & Allison Co. v. Evatt,* supra,—a case involving the right of a State to tax imported fibers. Manifestly, what was said in that case is not germane here. A bonus is not a tax. That differentiation has been generally recognized, more importantly for present purposes, by

the Supreme Court of the United States (see *Atlantic Refining Co. v. Virginia,* 302 U. S. 22, 26-27, and cases there cited; also *Southern Natural Gas Corp. v. Alabama,* 301 U. S. 148, 156; and *International Shoe Company v. Shartel,* 279 U. S. 429, 433) and by this Court; see *Commonwealth v. American Steel Hoop Company,* 226 Pa. 6, 8, 74 A. 617; *Commonwealth v. Danville Bessemer Company,* 207 Pa. 302, 306, 56 A. 871; and *Commonwealth v. Erie and Western Transportation Company,* 107 Pa. 112, 115. In the *American Steel Hoop Company* case, supra, we expressly recognized that a bonus "is not a tax, but a consideration for the grant of a privilege or franchise:" citing as supporting authority *Commonwealth v. Erie and Western Transportation Company,* supra, where the late Judge SIMONTON, of Dauphin County, on whose opinion this Court affirmed *per curiam,* aptly observed that "there is a clear and substantial distinction between a bonus and a tax". The same learned jurist then went on to point out that "in Railroad Company v. Maryland, 21 Wall. 456, the distinction between a tax and a bonus is clearly drawn" and that the payment to Maryland required by the charter of the Baltimore and Ohio Railroad Company on that company's passenger receipts was ". . . nothing more or less than a bonus, such as a state has a right to exact for the grant of a franchise, and [that] on the facts of that case the law imposing it was held valid, because it was a bonus [for the privilege of doing business in the State] and not a tax [on interstate commerce]". In *Commonwealth v. Danville Bessemer Company,* supra, the very Act of 1901 with which we are here concerned was recognized as prescribing "not a tax . . . but a bonus, which is a consideration for the grant of a privilege or franchise: [citing *Commonwealth v. Erie and Western Transportation Company,* cit. supra]".

The bonus required by the Act is neither an impost nor a burden on the tobacco or on any other physical

property as such. It is a charge or compensation demanded of the foreign corporation by the sovereign for the privilege of doing business within the State: see *Commonwealth v. American Steel Hoop Company,* supra. As was said in *Commonwealth v. Merchant Shipbuilding Corporation,* 26 Dauphin County Rpts. 89, 93, the Act "imposes a bonus upon a foreign corporation for the privilege of doing business and using capital in this State, *measured by the amount of property which is actually employed here . . .".* (Emphasis supplied). The question then remaining is as to the propriety of including in the base for measuring the bonus the value of capital of the company within the State represented, *pro tanto,* by the imported tobacco.

As provided by the Act, the amount of the bonus in any case is to be determined by the value of the capital employed or to be employed within the State without regard for the identity or the character of the goods making up such value. That the goods themselves, e.g., the tobaccos, as in the present instance, are constitutionally immune as imports from local imposts or taxes or, as foreign commerce, from locally imposed burdens, does not require that the value of such goods must, because of their constitutional immunity in certain regards, be eliminated as an element of value in measuring the amount of the bonus or franchise tax based on the value of the foreign corporation's capital employed or to be employed within the State. In *Flint v. Stone Tracy Company,* 220 U. S. 107, 165, it was said that once the sovereign has exercised its right or power to impose a privilege or franchise tax, it is not fatal to the charge that it was measured on the basis of income produced in part from property which itself is nontaxable; nor is it a valid objection that the measure included property which, as such, could not have been taxed directly. Mr. Justice STONE well expressed the idea in *International Shoe Company v. Shartel,* supra, at p. 433, as follows:

"A franchise tax imposed on a corporation, foreign or domestic, for the privilege of doing a local business, if apportioned to business done or property owned within the state, is not invalid . . . because a part of the property or capital included in computing the tax is used by it in interstate commerce". And, in *New York State v. Roberts,* 171 U. S. 658, which involved a State franchise tax measured upon a base which included income produced in part from the sale of imports in original packages, in upholding the validity of the franchise tax, Mr. Justice SHIRAS said for the Supreme Court at p. 664,—"Here no tax is sought to be imposed directly on imported articles or on their sale. This is a tax imposed on the business of a corporation . . . From the very nature of the tax, being laid as a tax upon the franchise of doing business as a corporation, it cannot be affected in any way by the character of the property in which its capital stock is invested. [Citing cases]"

Nor is the validity of a bonus, which is required as consideration for the grant of a privilege or franchise that the sovereign could lawfully withhold, dependent upon the method prescribed for computing the amount of the bonus. In *Atlantic Refining Co. v. Virginia,* supra, involving the State's exaction of an entrance fee from a foreign corporation for a license to carry on a local business, Mr. Justice BRANDEIS, speaking for the Supreme Court, said at pp. 26 and 27,—"As the entrance fee is not a tax, but compensation for a privilege applied for and granted, no reason appears why the State is not as free to charge $5,000 for the privilege as it would be to charge that amount for a franchise granted to a local utility, or for a parcel of land which it owned. If Virginia had the power to charge $5,000 for the privilege, the particular measure applied by the Legislature in arriving at that sum would seem to be legally immaterial . . . ." Of course, where the base specified for computing the bonus, required for the privilege or franchise, em-

braces the value of goods in interstate or foreign commerce, the bonus must not be exacted in such a way as to discriminate against such commerce. Thus in *Southern Natural Gas Corp. v. Alabama,* supra, Mr. Chief Justice HUGHES said at p. 156,—"As Alabama was competent to lay a franchise tax upon appellant for the privilege of doing an intrastate business, it was competent to measure the tax by the capital employed within the State provided the tax was not so laid as to discriminate against interstate commerce or otherwise lay a direct burden upon it". See also *International Shoe Company v. Shartel,* supra. The bonus payment required by the Act here involved is not directed in the slightest way against any particular property, as such, whether it be imported or domestic; and no impost or burden is placed upon the company's goods as being either foreign or interstate commerce. In fact, the bonus is not a recurring charge. So long as the total value of the capital employed or to be employed within the State remains less than the greatest amount thereof upon which the bonus has been paid at any one time, the company will have no additional bonus to pay; indeed, it is possible for the company to import tobacco recurrently and use the same in its business in Pennsylvania, *ad infinitum,* without incurring one penny of additional bonus liability.

We have not been referred to any decision in this State directly in point. But, the rationale of several of our own cases accords with the principle that a tax (or bonus) may be measured by the value of property which, itself, would not be amenable to taxation by the same governmental authority: see *Commonwealth v. Ford Motor Company,* 350 Pa. 236, 38 A. 2d 329, and *Commonwealth v. Quaker Oats Company,* 350 Pa. 253, 38 A. 2d 325. Both of those cases hold to such effect and quote with approval from decisions of the Supreme Court of the United States, including the cases hereinabove cited, promulgating and confirming a like rule. While,

concededly, the cases last cited *eo nomine,* being tax cases, are not on all fours with the instant case, they are, nonetheless, helpful argumentatively and persuasive in confirming by analogy the conclusion that the measure of a privilege or franchise tax or bonus may include the value of property which itself is not subject to tax by reason of relevant constitutional prohibition: e.g., Article I, Section 10 (2) of the Federal Constitution.

The company's argument that the tobacco, in its original packages in warehouses in Pennsylvania, remains in foreign commerce and is, therefore, not within the State for the purposes of the Act, rests upon an over-extended and irrelevant deduction derived from the "original package" theory. As we have already seen, the bonus places no burden upon foreign commerce, *qua* commerce, and, consequently, does not violate Article I, Section 8 (3) of the Constitution of the United States.

The imported tobacco involved in the present controversy was undeniably the property of Bayuk; it was to be used in the company's manufacture of cigars and other tobacco products in Pennsylvania; and, at the critical time (1941), it was physically located within the State. It is clear, therefore, that the tobacco constituted a part of the capital of the company to be employed here within the terms of the statute so far as the measurement of the bonus is concerned; and, its value was properly included as an element of the subject capital in measuring the amount of the bonus liability. Such inclusion does not contravene any constitutional provision so far advanced; and, in ruling to opposite effect, the learned court below erred.

The judgment is reversed with directions that judgment be entered for the Commonwealth with costs.

Mr. Justice PATTERSON dissents.