# Commonwealth v. William Goldman Theatres, Inc.

*Robert E. Woodside*, Attorney General, and *David Fuss*, Deputy Attorney General, for Commonwealth.

*Barnes, Dechert, Price, Myers & Clark*, for defendant.

SOHN, J., January 14, 1952.—This case comes before us on appeal from the refusal of the Board of Finance and Revenue to resettle defendant's 1946 foreign bonus account.

The case was heard by the court without a jury, in accordance with a waiver filed under the provisions of the Act of April 22, 1874, P. L. 109, 12 PS §688 et seq. At the time of the hearing a certain agreed stipulation of facts was entered into, duly executed by both parties. The facts found hereafter, taken from that stipulation of facts, are those facts which we consider necessary and pertinent to a proper determination of the issue involved.

*Facts*

1. William Goldman Theatres, Inc., defendant, is a Delaware corporation, which, during the calendar year 1946, was doing business, as authorized, in the Commonwealth.

2. During the year 1946, defendant's executive and main offices were located on the premises of the Goldman Theatre, 30-36 South Fifteenth Street, in the City of Philadelphia, Pa.

3. Defendant operated a movie theatre on the premises as well as elsewhere in the Commonwealth.

4. Under date of June 23, 1945, defendant entered into an agreement with the City of Philadelphia, trustee under the will of Stephen Girard, deceased, for the land on which the premises 30-36 South Fifteenth Street are erected, for a period of 25 years.

5. Under date of August 20, 1945, defendant entered into an agreement with Golder Construction Company, Inc., for the construction of the Goldman Theatre on the leased premises, at a cost to defendant of $460,428.17.

6. The lease agreement provided, inter alia, that as surety for the payment of rent, defendant would construct a theatre building upon the leased premises at a cost of not less than $100,000, to be paid entirely by defendant; that fire insurance and public liability was to be placed and paid for by defendant; that city and school taxes, water rents, steam, gas, electricity and other assessments were to be paid by defendant; that in the event of fire damage the lessor would be reimbursed out of insurance proceeds for the cost of restoration; and that, in the event of condemnation, the lessor would pay to defendant out of any award the cost of the construction of the building, less four percent depreciation per year from the time of construction to the time of condemnation.

7. The agreement for the construction of the theatre designated defendant as the "Owner."

8. A total of $460,428.17, representing the cost of constructing the Goldman Theatre, was charged originally in an account on the general ledger of defendant entitled "Construction — 15th Street." Subsequently, by journal entry this amount was transferred to another account in the general ledger entitled "Property Leased." In a subsidiary ledger called "Property Record," this item is shown under a classification entitled "Goldman Theatre—Lease Improvements." On defendant's books of account and in the various Pennsylvania and Federal tax reports and returns defendant made, this item is shown as a capital asset.

9. The item "Goldman Theatre—Lease Improvements" has been amortized by defendant in the various Pennsylvania and Federal tax reports and returns it has made and in its books of account over a period extending from the date of the initial operation of the Goldman Theatre to the end of the lease term. A reserve for this purpose has been set up on its books of account by defendant entitled "Reserve for Depreciation of Property Leased."

10. The Goldman Theatre constitutes part of defendant's capital assets.

11. Defendant duly filed a bonus report for foreign corporations for the year 1946, returning $1,298,-869.07 as the greatest amount of capital employed in Pennsylvania at any one time during 1946; $1,230,-596.84 as the greatest amount of capital upon which bonus had been previously assessed; $68,272.23 as the increase in capital in Pennsylvania subject to bonus; and $227.57 as the amount of bonus due the Commonwealth of Pennsylvania, which amount it paid to the Commonwealth of Pennsylvania. There was excluded

from the item "Greatest Amount of Capital in Pennsylvania" the sum of $475,116.70 of improvements made to leased theatres and theatre sites, including construction of the Goldman Theatre.

12. On or about March 17, 1948, defendant received a settlement from the Department of Revenue in which capital wholly employed in Pennsylvania was increased to $1,773,985; capital upon which bonus was previously assessed remained at $1,230,596.84; amount of capital increased was raised to $543,389; and the bonus due the Commonwealth of Pennsylvania was raised to $1,811.29, an increase of $1,583.92 over the amount reported and paid by Goldman.

13. From time to time improvements were added to the theatres and the theatre site leased by Goldman. on December 31, 1946, the amounts of such improvements amounted to $956.75 for the Erlanger Theatre, $7,853.86 for the Hippodrome Theatre, $4,127.92 for the News Theatre, $1,750 for the Bryn Mawr Theatre, and $460,428.17, representing the cost of construction of the Goldman Theatre (the only amount here in issue), a total of $475,116.70.

14. The construction contract between defendant and the Golder Construction Company, Inc., provided that the construction company was to provide all of the materials and perform all of the work for the construction of the Goldman Theatre.

15. None of the materials covered by the construction contract between defendant and the Golder Construction Company, Inc., were purchased or owned by defendant.

16. The construction of the Goldman Theatre cost in its entirety the sum of $460,428.17.

17. Under paragraph 23 (d) of the lease agreement entered into between defendant and the City of Philadelphia, all of the materials entering into the construction of the Goldman Theatre on its completion imme-

diately became the absolute property of the lessor and formed part of the demised premises.

18. At no time has defendant owned or held title to any of the tangible property or materials entering into the construction of the Goldman Theatre, nor has defendant at any time owned or held title to the Goldman Theatre.

### Discussion

The statute under which the bonus in question was imposed upon the defendant is as follows:

"From and after the passage of this act all corporations, . . . which have any part of their capital actually employed wholly within this State . . . shall pay . . . a bonus of one-third of one per centum upon the amount of their capital actually employed or to be employed wholly within the State of Pennsylvania, and a like bonus upon each subsequent increase of capital so employed": Act of May 8, 1901, P. L. 150, sec. 1, 72 PS §1851.

The question which we are called upon to decide is this:

"Where a foreign corporation pays for the construction of a building, to which it never has title, upon premises leased in the Commonwealth for twenty-five years, uses the improved premises for the operation of its business activity in the Commonwealth, and on its books of account itemizes the construction as a capital asset and amortizes the cost thereof over the term of the lease on its books and on tax returns to the State and Federal Government, does the value of the building represent 'capital' of the foreign corporation 'employed in the state' within the meaning of the Foreign Bonus Act of May 8, 1901, P. L. 150?"

The Act of 1901 imposing a bonus on foreign corporations doing business in Pennsylvania has been construed by the Pennsylvania courts not to be a tax,

but to be a payment for the privilege of doing business in Pennsylvania.

In Commonwealth v. Bayuk Cigars, Inc., 359 Pa. 202, 207 (1948), the court said:

"A bonus is not a tax. That differentiation has been generally recognized, more importantly for present purposes, by the Supreme Court of the United States . . . and by this court; see Commonwealth v. American Steel Hoop Company, 226 Pa. 6, 8, 74 A. 617; Commonwealth v. Danville Bessemer Company, 207 Pa. 302, 306, 56 A. 871, and Commonwealth v. Erie and Western Transportation Company, 107 Pa. 112, 115."

The word "capital" as used in the Act of 1901 has been construed by this court to mean the value of the property used in its business in Pennsylvania. In Commonwealth v. Weirton Steel Co., 277 Pa. 6, 7, the Supreme Court said:

" 'It has been settled by a number of decisions in this court that the word "capital" as used in the bonus Act of May 8, 1901, means property or assets employed in the State.' "

The question next arises as to the *nature* of the capital subject to tax under the Act of 1901. The terms of the statute provide in part that the bonus shall be paid:

" . . . upon the amount of their capital actually employed or to be employed wholly within the State of Pennsylvania, and a like bonus upon each subsequent increase of capital so employed."

The courts of Pennsylvania have construed the statute to include only *tangible* property located in Pennsylvania as being within the statute's purview. See Commonwealth v. G. W. Ellis Company, 237 Pa. 328; Commonwealth v. West Penn Steel Co., 25 Dist. R. 51; Commonwealth v. Schwarzschild, 259 Pa. 130; Commonwealth of Pennsylvania v. Large Distilling Co., 22 D. & C. 147.

The distinction between tangible and intangible property has been expressed to be:

" 'Intangible. Not tangible; incapable of being touched or perceived by touch; impalpable; imperceptible. 1. 'Tangible.' Capable of being touched; also, perceptible to the touch; tactile; palpable. 2. Capable of being possessed or realized; readily apprehensible by the mind; real; substantial, evidence.' " Moeller, McPherrin & Judd v. Smith et al., 127 Neb. 424, 255 N. W. 551.

Also:

"Tangible property is that which is visible and corporeal, having substance and body as contrasted with incorporeal property rights such as franchises, choses in action, copyrights, the circulation of a newspaper, annuities, and the like." Roth Drugs, Inc., et al. v. Johnson et al., 13 Cal. App. 2d 720, 57 P. 2d 1022, 1028.

Thus it is necessary to determine if a leasehold interest is a tangible asset within the meaning of the Act of 1901. In Real Estate and Conveyancing in Pennsylvania by Robey, 1922, p. 312, §308, it is said:

"Although a leasehold interest is an estate in real property it is considered as personalty and not as real estate. This doctrine originated in the early common law when a lease was nothing more than a contract right, and persisted even after leases became recognized as estates in the land. . . . In addition to being an estate in land, a lease is also a contract, with terms and conditions binding both parties."

Also, see Davis et al. v. Investment Land Co., 296 Pa. 449, 454, wherein it is said that: "A leasehold is a chattel real", and Brown v. M. Beecher et al., 120 Pa. 590, 608: "As we have already said, the leases from Cornen conveyed an interest in land, but a chattel interest only."

Thus the leasehold interest of defendant in the building and improvements, as described in the ad-

mitted or stipulated facts in this particular case, has characteristics of both a tangible and an intangible interest; tangible in respect to defendant's right to take physical possession of the building and the improvements and to enjoy the fruits of such physical possessions, and intangible with respect to defendant's enforcible right arising from the contractual terms of the lease agreement. Consequently, under the stipulated facts in this case, the building and improvements enjoyed by defendant under its leasehold in this case constitute tangible assets within the contemplation of the Act of 1901. Indeed, Stradley and Krekstein in their work on "Corporate Taxation and Procedure in Pennsylvania," vol. I, p. 66, have this to say:

"There is no doubt that buildings erected upon leased land and additions or alterations to leased buildings are *tangible* property, but liability for bonus on these assets should also depend on whether *title* vests in the lessor or lessee." (Italics supplied.)

Defendant's contention in this case is that it is essential that a foreign corporation have legal title to the property in order that it be subject to bonus, even though the foreign corporation provided the funds to create the property. As an examination of the facts found will disclose, the lease agreement between defendant and the City of Philadelphia as trustee, provided that the title to the building erected on the lessor's land should immediately vest in the lessor. There is no dispute that defendant never had title to the building which it had erected at a cost to it of $460,-428.17.

Defendant has presented several cases for the court's consideration which defendant feels are decisive of the issue that title must be found to be in defendant before bonus may be imposed. In Commonwealth v. Seaboard Commercial Corporation, 54 Dauph. 182; Commonwealth v. National Cash Regis-

ter Co., 271 Pa. 406, and Commonwealth v. Motors Mortgage Corporation, 297 Pa. 468, the same question was involved. In all these cases the foreign corporations were acting as bailors under bailment lease contracts. In Commonwealth v. National Cash Register Co., the Commonwealth levied a capital stock tax on the total value of the equity in the cash registers outstanding in defendant's name, and defendant objected to it because the tax was in substance levied upon accounts receivable rather than on tangible assets within this State. The case of Commonwealth v. Motors Mortgage Corp. involved a tax settlement made against it for capital stock taxes. The case of Commonwealth v. Seaboard Commercial Corporation involved the act referred to in the instant case. All of these cases, however, were faced with the same problem of finding whether the property of the corporation was a *tangible* property interest in the State of Pennsylvania. It was held in all of them that the interests of the foreign corporation bailors in the properties which were the subject of the bailment and which were located in Pennsylvania were tangible interests and were taxable. However, we do not interpret these decisions as turning upon the question of title. To the contrary, our interpretation of those decisions is that they were made to turn upon the proposition that *the physical property which was involved* was in fact located within the State of Pennsylvania. A bailment lease is a security device by which the bailor retains legal title to the property, as security for the performance by the bailment lessee of the covenants of the bailment lease. In the cases just cited, the corporations did retain title to the tangible property, the automobiles and the cash registers, which were the subject matter of the bailment leases. By retaining title in the bailor, the corporations as bailors retained an interest in the tangible property, their interest being determined by

the balance due the corporation under the bailment lease. This balance was found to be capital employed by the corporation in Pennsylvania in its business of financing bailment leases. In the instant case, the leasehold of the land for 25 years did confer a tangible property interest in defendant in the nature of a chattel real. Defendant, by virtue of the lease agreement, received a right to the possession and enjoyment of the land for a period of 25 years and to the possession and enjoyment of the buildings erected thereon. This right, without consideration of the question of title, is an interest in tangible property in the nature of a chattel real.

Defendant has also presented for our consideration the cases of Commonwealth v. Weirton Steel Co., 277 Pa. 6, and Commonwealth v. Bigelow-Willey Motor Company, 5 D. & C. 378. In these cases the foreign corporations acquired title to realty by payment of some cash and by issuing mortgage obligations for the balance. It was held that the corporations were liable for bonus, based on capital as calculated on the full purchase price of the realty, without permitting a deduction from the full purchase price for the outstanding mortgage obligations. Mention is made in these cases of title to the realty, but if the foreign corporations had not possessed title to the realty, there would have been no property interest in the foreign corporations. We do not consider that these cases are authority for appellant's position that title is determinative on the question whether appellant is subject to bonus assessment for the value of the leasehold improvement of the leased land, because in the instant case there is a tangible property interest vested in appellant by virtue of the enforcible lease agreement in the nature of a chattel real, without regard to the question of who possesses the legal title to the realty.

In the case of Commonwealth v. Mountain Ice Co., 22 Dist. R. 670, this court had before it a similar problem involving foreign bonus. In that case the foreign corporation had expended borrowed funds to lease ice plants or ice fields in Pennsylvania. Judge Kunkel there held that such expenditures were taxable as capital wholly employed within the State, within the meaning of the Act of 1901. We feel that money expended to erect improvements on leased land is capital employed within the State in the same sense that a present payment of a lump sum of money for a lease to extend over several years is an employment of capital.

Since we find there is no judicial construction of the Act of 1901 dictating that there can be a tangible property interest only if legal title is vested in the foreign corporation, an examination of the statute may be profitable. The statute provides in part that the bonus shall be paid ". . . upon the amount of their capital actually employed or to be employed wholly within the State of Pennsylvania, and a like bonus upon each subsequent increase of capital so employed."

The determinative words seem to be "capital actually employed." As noted heretofore, bonus is not a tax but a payment for the privilege of doing business in Pennsylvania and receiving the protection of the laws of Pennsylvania and the benefits of the orderly administration of society. The measure of the bonus is the amount of property receiving the protection and benefits of Pennsylvania's laws. The terms of the statute do not appear to lend themselves to an interpretation that only that property to which the foreign corporation holds title is subject to bonus; rather, the terms of the statute lend themselves to the expression of the legislative intention that all property utilized in Pennsylvania by the foreign corporation in the pro-

motion of its corporate objectives and receiving the benefit and protection of the laws of Pennsylvania should be subjected to bonus payment. To place an artificial distinction on the basis of title would be to defeat the legislative intent. The cases of Commonwealth v. Weirton Steel Co. and Commonwealth v. Bigelow-Willey Motor Co., supra, tend to support this view. In both cases the bonus was assessed on the total value of the property without regard to the fact that the realty was encumbered by mortgages. The court imposed bonus on the full value of the realty as being the "capital actually employed," even though the foreign corporation had paid only a small fraction of the total cost of the realty with its own funds. The court determined that the foreign corporations were employing the full value of the property and thus the full value was subject to bonus as receiving the benefit and protection of Pennsylvania's laws.

Although there is no appellate decision with respect to the question here involved, our attention has been called to a similar situation in the State of New York. In People ex rel. Long Dock Mills and Elevator v. Wilson, 106 N. Y. Supp. 1 (121 App. Div. 376 (1907)), the New York Supreme Court held that money of a foreign corporation invested in structures on leased grounds is capital employed within the State, although the structures may become in law the property of the owner of the ground. The court stated, at page 2:

"Nor can it be material that the money was expended upon leased ground, and that the structures erected thereby might become in law the property of the owner of the ground. It is nevertheless capital employed within this state, whether invested in structures upon leased ground or upon ground that was the property of the corporation itself."

The total of $460,428.17, representing the cost of constructing the Goldman Theatre, was charged orig-

inally in an account on the general ledger entitled "Construction—15th Street." Subsequently, by general entry, this amount was transferred to another account in the general ledger entitled "Property Leased." In a subsidiary ledger called "Property Record," this item is shown under a classification entitled "Goldman Theatre—Lease Improvements." On defendant's books of account and in the various Pennsylvania and Federal tax reports and returns which defendant made, this item is shown as a capital asset.

The item of "Goldman Theatre—Lease Improvements" has been amortized by defendant in the various Pennsylvania and Federal tax reports and returns it made and in its books of account over a period extending from the date of initial operation of the Goldman Theatre to the end of the lease term. A reserve for this purpose has been set up on its books of account by Goldman entitled "Reserve for Depreciation of Property Leased."

In this connection we find that in People ex rel. Gorham Mfg. Co. v. State Tax Commission, 189 N. Y. Supp. 241 (1921), the court said, at page 242:

" . . . From the cost price it made deduction for depreciation. Furthermore the books of the relator were a standing admission by it that the value of the leases was precisely that which the commission fixed as their value."

As a result of our discussion of the pertinent, agreed facts and the various legal authorities we have discussed, we arrive at the following

### Conclusions of Law

1. Defendant's leasehold interest in the building and in the improvements it enjoys under its lease constitute tangible property having a situs in the Commonwealth of Pennsylvania.

2. The improvements for which defendant paid and which are used by defendant corporation in the active operation of its business represent capital of the corporation employed in the Commonwealth of Pennsylvania and are subject to payment of the bonus contemplated by the Act of May 8, 1901, P. L. 150.

3. Judgment should be entered in favor of the Commonwealth and against defendant in the amount of $1,811.29, with interest, and credit thereon given to defendant for the sum of $227.57 heretofore paid.

And now, January 14, 1952, judgment is hereby entered in favor of the Commonwealth and against defendant in the amount of $1,811.29, with interest, less credit in the sum of $227.57 heretofore paid thereon.