### Hoffman, Admr. v. Misericordia Hospital Of Philadelphia

*David C. Harrison*, for plaintiff.
*Francis E. Shields*, for defendant.

TAKIFF, J., April 5, 1973.—This matter is before the court presently on defendant Misericordia Hospital's motion for judgment on the pleadings in an assumpsit action seeking damages for blood "sold" to plaintiff's decedent and transfused to her while a patient at the hospital as a result of which she contracted serum hepatitis. The action is predicated upon alleged breaches of the implied warranty of merchantability and/or fitness for the particular purpose for which the blood was intended. A companion action in trespass, bottomed upon the same factual circumstances, is not presently before the court.

The operative events occurred in May, 1967. The fundamental liability issue was previously raised by defendant by preliminary objections which were initially sustained by the original trial court. That order was vacated by the Supreme Court in Hoffman v. Misericordia Hospital, 439 Pa. 501 (1970), with a remand for further proceedings consistent with the opinion then rendered. In its opinion the Supreme Court acknowledged that the issue was one of first impression in the appellate courts of Pennsylvania and guidelines for the proper disposition of the matter by the trial court were enunciated by the Supreme Court. While the case was awaiting trial, Act of January 28,

1972 (No. 9), P. L. 12, 35 PS §10021, was enacted. That act provides:

"Notwithstanding any other law, no hospital, blood bank, or other entity or person shall be held liable for death or injury resulting from the lawful transfusion of blood, blood components or plasma derivatives, or from the lawful transplantation or insertion of tissue, bone or organs, except upon a showing of negligence on the part of such hospital, blood bank, entity or person. For the purposes of this act negligence shall include but not be limited to any failure to observe accepted standards in the collection, testing, processing, handling, storage, transportation, classification, labelling, transfusion, injection, transplantation or other preparation or use of any such blood, blood components, plasma derivatives, tissue, bone or organs. Specifically excluded hereunder is any liability by reason of implied warranty or any other warranty not expressly undertaken by the party to be charged."

Thereupon, defendant filed an amended answer and new matter asserting the foregoing statute as a further defense and in due course submitted the instant motion for judgment on the pleadings, pursuant to Pennsylvania Rule of Civil Procedure 1034. In support of its motion, defendant asserts that the statute is a complete bar to this assumpsit action on the alternative grounds that: (a) the legislative enactment was intended to and should be applied retroactively, and (b) the statute must be considered a legislative declaration of policy that should be accepted and followed by the courts in all pending as well as future actions, except those founded in negligence.

The lodestar by which we must be guided in moving through the admittedly uncharted waters as to the entitlement of plaintiff to proceed in assumpsit in a cause of action arising before the statutory enactment and

the applicability, either retroactively or retrospectively, of that enactment, is clear. A motion for judgment on the pleadings is, in effect, a demurrer. The same principles expressed in Hoffman, supra, 439 Pa. 501, at 503, in determining the original demurrer are here also applicable; judgment on the pleadings should be entered only where the right is clear and free from doubt and the law says with certainty that no recovery is possible: King v. U.S. Steel Corp., 432 Pa. 140 (1968); London v. Kingsley, 368 Pa. 109 (1951).

The threshold question is, what was the status of the law as of the time the operative acts occurred? In this inquiry, the opinion in Hoffman is our compass. Reading it carefully, it is clear that our Supreme Court sought to avoid the shoals of the "service" (Perlmutter v. Beth David Hospital, 308 N.Y. 100, 123 N.E. 2d 792 (1954)), or "sale" (Cunningham v. MacNeal Memorial Hospital, 113 Ill. App. 2d 74, 251 N.E. 2d 733 (App. Ct. 1969)), dichotomy which has dominated much of the rationale of the variety of cases concerned with this issue in other jurisdictions. To the contrary, our Supreme Court, noting that implied warranties may exist in nonsales transactions, acquiesced in the observation of the Florida Court of Appeals in Russell v. Community Blood Bank, Inc., 185 So.2d 749, 752 (Fla. App. Ct., 1966).

"It seems to us a distortion to take what is, at least arguably, a sale, twist it into the shape of a service, and then employ this transformed material in erecting the framework of a major policy decision."

Recognizing that in Pennsylvania implied warranties have been recognized in nonsales transactions, the court concluded that even if it ultimately be determined that the operative facts constituted a "service," it could not be said with certainty that an assumpsit action would not lie based upon implied warranty in

nonsales transactions. A fortiori, if it be determined that the operative facts gave rise to a "sale," the same conclusion of the propriety of the cause of action in assumpsit, but with even greater impact as far as the controlling effect, if any, of the subsequently enacted statute, would be significant.

In sum, therefore, Hoffman declares a negative, i.e., "it cannot be said with certainty that no recovery is permissible upon the claim here made" (page 507), and "we do not deem it essential or, due to the sparsity of the record at this stage of the litigation, wise to decide this question at this time": page 508.

The sparsity of the record has not been enhanced by the passage of time. The statutory enactment upon which the present motion is founded, is the single new and added factor. The essential criteria for adjudication on objections in the nature of a demurrer and for a motion for judgment on the pleadings being basically the same, the new element of the subsequently enacted statute requires its examination. Such inquiry, however, must assume as a fundamental hypothesis that either the statute is to be construed as a declaration of the policy of the Commonwealth in an area of the law heretofore untouched, i.e., no right or denial of right ever previously existed and the statute is speaking de novo in a field of law, or such a right previously existed and the statutory enactment seeks to retroactively or retrospectively abrogate or limit that existing right or the remedy for its breach. The matter is of sufficient moment to warrant its scrutiny under either of these hypotheses, although they may end up as mutually contradictory in terminal conclusion.

Dealing first with the implications of retroactivity of application of the statute to an existing lawsuit, the underlying concept is that enunciated in section 56 of

the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 56, 46 PS §556, which declares:

"No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature."

The language of the statute itself does not yield a clear or manifest intention that it shall be retroactive. Defendant argues that the opening statement, "Notwithstanding any other law, no hospital . . . shall be held liable . . .," discloses an intent that the restriction is to be applied to all future holdings and not solely to future causes of action. It is asserted that the statute is not merely retrospective as to the events out of which the claimed cause of action originated but also retroactive to the right thereby asserted. Such an assertion seeks to prove the matter by the reiteration of the proposition itself and not by any explicit or clearly articulated legislative intent. While the phrase "Notwithstanding any other law" is retrospective in nature, being a reference to a state of fact in being at the time of the legislative enactment (see Commonwealth v. Rockwell Manufacturing Co., 392 Pa. 339 (1958)), the accompanying phrase "shall be held" looks to the future: Misites v. Steel City Piping Co., 441 Pa. 339 (1971); Commonwealth v. Rockwell Manufacturing Co., supra, and see Girard Trust Co. v. Philadelphia City and County, 359 Pa. 319 (1948). Creighan v. Pittsburgh, 389 Pa. 569 (1957), is inapposite to the present consideration and the hypothesis upon which our analysis is predicated. For the present purpose, we are assuming the existence of a legally enforceable right which antedated the statute and are seeking an evaluation of the statute if retroactivity was intended so as to bar the right. In Creighan, no antecedent right existed; the operative facts preceded the statute and plaintiff asserted that the newly created statutory right

should be applied retrospectively to the prestatutory events but prospectively only as to entitlement to the newly created benefit from the date of the statute. The court concluded that plaintiff was not barred by the concept of illegal retroactivity and allowed plaintiff benefits from the date the statutory right was declared. See also Smith v. Fenner, 399 Pa. 663 (1960). In like vein, distinction must be noted between the instant consideration and those cases where retroactivity was determined to have been intended but the subject was a procedural matter, such as in Seneca v. Yale & Towne, 142 Pa. Superior Ct. 470 (1941), or it was remedial or curative and no previously existing legal right was abated or destroyed, as in Malicks' Petition, 137 Pa. Superior Ct. 139 (1939); Woolworth Co. v. Pittsburgh, 2 Comm. Ct. 338 (1971).

The underlying general principles of statutory construction have been restated many times. In Barnesboro Borough v. Speice, 40 Pa. Superior Ct. 609, 612 (1909), the rules are stated as follows:

"The general rule undoubtedly is that legislation which affects rights will not be construed to be retroactive unless it is explicitly so declared in the statute. But where it concerns merely the mode of procedure it is applied, as of course, to litigation existing at the time of its passage: Kille v. Reading Iron Works, 134 Pa. 225. Retrospective laws may be supported when they impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted: Shonk v. Brown, 61 Pa. 320. 'Retrospective laws generally, if not universally, work injustice, and ought to be so construed only when the mandate of the legislature is imperative:' Taylor v. Mitchell, 57 Pa. 209. 'There is no canon of construction better settled

than this, that a statute shall always be interpreted so as to operate prospectively and not retrospectively unless the language is so clear as to preclude all question as to the intention of the legislature:' Neff's Appeal, 21 Pa. 243; McCabe v. Emerson, 18 Pa. 111. These well-settled principles have never been departed from and have been recognized and reaffirmed in a long line of cases: Smith v. Railroad Company, 36 Pa. Superior Ct. 584; Com. v. Bessemer Company, 207 Pa. 302; Horn & Brennan Mfg. Co. v. Steelman, 215 Pa. 187; Lewis v. Pennsylvania Railroad Company, 220 Pa. 317. The principle established by these decisions rules this case."

The legislative history, to which one might make appropriate reference on an inquiry as to whether or not retroactivity was intended, is singularly barren of assistance. Although there were various versions of the act (Printer's Numbers 1421, 1506, 2127 and 2199), commencing with its introduction on June 15, 1971, the changes were in the category of housekeeping revisions, only. Thus, in an earlier version the word "licensed" preceded "hospital" and the description of the class was ultimately deleted. Similarly, the final act exculpated the actor from liability for "death or injury" whereas an earlier version described the subject as "death, injury or infection"; a deletion which is essentially to remove what might be misleading surplusage. The only true antecedent legislative history is the status of the law, as enunciated on September 30, 1969, in the Supreme Court's opinion in Hoffman, which the legislature must be presumed to have had in contemplation when it declared "Notwithstanding any other law . . ." in its prefatory statement in the text of the act.

Neither in the language of the act nor in its antecedent history do we find that retroactivity was "clearly

and manifestly . . . intended by the legislature." The legislature being aware of the status of the law as expressed in Hoffman, supra, when it stated "Notwithstanding any other law . . .," since Hoffman was the only law on the subject, in seeking a determination as to whether the legislature intended the act to be retroactive, one must consider what the law was as of that time. It needs little argument that the legislative intent is not to be construed as seeking a deliberate violation of the law and if an alternative to such a construction can be found, it should be found in order to avoid the conclusion of the invalidity of the legislative enactment. While retroactivity is permissible where the legislative intent is clearly manifest, such is not the fact when retroactivity will destroy a vested right or impair contractual obligations: Goodyear v. Rumbaugh, 13 Pa. 480 (1850); Anderson v. Sunray Elec., Inc., 173 Pa. Superior Ct. 566 (1953); Barnsboro Borough v. Speice, supra. Thus, in seeking a resolution of the legislative intent, we are compelled back to an examination of the first hypothesis upon which the analysis of possible retroactivity was predicated; that no right pre-existed the statute so that it spoke de novo in a new field of law, declaring a public policy so that retroactivity, if concluded, would not destroy a vested right.

One thing is unequivocally declared in Hoffman; an assertion through a demurrer then ruled on that a right enforceable in an assumpsit action did not exist, was rejected. The determination of the converse, that such a right then existed under our law, was deferred pending a trial record in which the pertinent issues for a proper adjudication of this case of first impression could be developed. To assume that the legislature preempted the judicial prerogative of declaring that the antecedent law did not recognize such a right of

action would be to attribute a purpose which this court will not accept. Indeed, the Supreme Court had declared otherwise. Alternatively, to assume that the legislature ignored the possibility that the Supreme Court, after a trial in the nisi prius court would conclude that such a cause of action did validly lie, would be to attribute to the legislature an intent to abrogate and destroy a vested right should this statute be deemed retroactively applicable to a pre-existing cause of action; an illegal consequence which will not be accepted as part of the legislative intent in the absence of a clearly manifest purpose.

On the basis of the foregoing, the court concludes that retroactivity was not intended in the act.

One additional observation is pertinent. Defendant's argument in support of its motion seeks to equate the policy making attributes of the legislature with the judicial function of a court. It reasons that since the Supreme Court did not affirmatively speak on the existence of the right of action, ergo such a right of action did not exist because the Supreme Court did not choose to "create" such a right; when the legislature spoke, therefore, it did so in the existence of a vacuum, enunciating a policy which should be applied retroactively as well as prospectively. This approach is a misreading of the Supreme Court's opinion and of the judicial function. While the issue was and is one of first impression in this Commonwealth, and though its resolution may be of limited applicability in the future in view of the legislative action, the remand was for purposes of developing an adequate record from which the Supreme Court could decide that issue. The function which the court deferred was not that of creating a new right but of determining whether or not such a right exists under the law as it had developed up to the time this claim originated. The process of judicial

determination, absent prior legislation or precedent, may be affected by considerations of policy but it does not alter the fact that this historically sanctioned process, inherent in our system of law and responsive to the needs of a changing social order, is not to be equated with the legislative process so as to compel the conclusion that no legally enforceable right existed merely because it had not been articulated in a recorded case.

The scope of the effort to resolve this issue may appear to be disproportionate to the dimensions of the problem, since all cases arising after the effective date of the statute will be controlled by it so long as the act remains undisturbed. However, the rights of even one individual are as sacred as those of a horde and the responsibility of the judicial function cannot be avoided by considerations of quantity or expediency.

Defendant's motion for judgment on the pleadings is denied.