Jesus **VELAZQUEZ** Plaintiff,

v.

**UPMC BEDFORD MEMORIAL HOS-PITAL, a subsidiary hospital of the University of Pittsburgh Medical Center, successor-in-interest to Memorial Hospital of Bedford County, and Marc J. Finder, M.D. Defendants.**

No. CIV.A.3:03–235J.

United States District Court,
W.D. Pennsylvania.

July 26, 2004.

Lawrence D. Kerr, Berk, Whitehead, Cassol, Feliciani & Kerr, Greensburg, PA, for Plaintiff.

Daniel P. Stefko, Wilbur McCoy Otto, Jennifer M. Kirschler, Rebecca J. Maziarz, Dickie, McCamey & Chilcote, Pittsburgh, PA, for Defendant UPMC Bedford Memorial Hospital.

Walter F. Wall, Meyer, Darragh, Buckler, Bebenek & Eck, Altoona, PA, Diane Barr Quinlin, Olszewski & Quinlin, Pittsburgh, PA, for Defendant Marc J. Finder, M.D.

## MEMORANDUM OPINION AND ORDER

GIBSON, District Judge.

This case comes before the Court on Defendant's, Marc J. Finder, M..D., Praecipe for Entry of Non Pros (Document No. 7). In consideration of the Defendant's Praecipe for Entry of Non Pros, the Plaintiff's Motion to Strike Praecipe for Entry of Judgment of Non Pros (Document No. 8), and Defendant's Brief in Opposition to Motion to Strike Praecipe for Entry of Judgment of Non Pros (Document No. 11), the Court shall deny the Defendant's Praecipe for Entry of Non Pros.

## JURISDICTION

Jurisdiction is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1332, in that all parties to the above-captioned civil action are citizens of different states, and the subject matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. Specifically, Jesus Velazquez (hereinafter "Plaintiff") is a citizen residing in the state of Ohio, and he seeks damages in excess of $75,000.00, plus interest and costs. UPMC Bedford Memorial Hospital is a subsidiary hospital of the University of Pittsburgh Medical Center, a successor-in-interest to the Memorial Hospital of Bedford County (hereinafter "UPMC Bedford"), which has an office and principal place of business in Everett, Pennsylvania. Marc J. Finder, M.D. (hereinafter "Defendant") is a licensed medical doctor practicing emergency medicine with privileges at UPMC Bedford. Thus, each Defendant is a citizen of a different state than the Plaintiff.

This Court is also an appropriate and convenient venue for this civil action pursuant to 28 U.S.C. § 1391.[1]

## BACKGROUND

On or about June 30, 1997[2], the Plaintiff, who was then a thirteen year old minor, alleges that he and his mother were returning from a vacation and driving through the Commonwealth of Pennsylvania. (Document No. 1). While spending an evening in a motel near Bedford, Pennsylvania, the Plaintiff was awakened with lower abdominal pain in the late evening hours of June 30, 1997. *Id.* Thereafter, the Plaintiff's mother drove the Plaintiff to UPMC Bedford where the Plaintiff was admitted "on an emergent basis." *Id.*

On or about June 30, 1997, the Plaintiff was examined by UPMC Bedford nurses and the Defendant, "who was the emergency physician on duty". (Document No. 1). The Plaintiff contends that the Defendant failed to properly "diagnose the [P]laintiff with testicular torsion", and as a consequence, the Defendant "breached the applicable medical standards of care." *Id.* Furthermore, the Plaintiff claims that as a result of the "negligence" of the Defendant and UPMC Bedford Memorial Hospital, the Plaintiff "subsequently lost his left testicle", thereby suffering injuries and damages. *Id.*

On October 10, 2003, the Plaintiff filed a complaint against the Defendant and UPMC Bedford Memorial Hospital in the United States District Court for the Western District of Pennsylvania.[3] Approximately 64 days later, on December 24, 2003, the Defendant filed a Praecipe for Entry of Non Pros (Document No. 7). Specifically, the Defendant asserts that the Plaintiff failed to follow Pa.R.Civ. P. 1042.3 which requires that the Plaintiff file a certificate of merit letter verifying that the Plaintiff has a meritorious professional negligence claim.[4]

---

1. The Pennsylvania Supreme Court modified its venue provisions with respect to medical professional liability actions. See Pa.R.Civ.P. 1006(a.1). Therefore, pursuant to Rule 1006(a.1) a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in the county in which the cause of action arose. Pa.R.Civ.P. 1006(a.1). In the case *sub judice*, the claim arose in Bedford County, Pennsylvania; therefore, the proper venue lies in the Western District Court of Pennsylvania.

2. The Defendant alleges in his Answer to the Plaintiff's Complaint that the facts giving rise to the case *sub judice* occurred through the morning hours of June 30, 1997, and not, as the Plaintiff claims, through the morning hours of July 1, 1997. (Document No. 5).

3. In this diversity cause of action, Pennsylvania substantive law applies. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Pursuant to 42 Pa.C.S.A. § 5533(b)(1)(i), "[i]f an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter." Also, "... the term 'minor' shall mean any individual who has not yet attained 18 years of age." 42 Pa.C.S.A. § 5533(b)(1)(ii).

4. Pa.R.Civ.P. 1042.3(a) provides that in an action based on allegations that a licensed professional deviated from the acceptable professional standard, the attorney for the plaintiff shall file with the complaint or within sixty days after the filing of the complaint a certificate of merit signed by the attorney. Pa.R.Civ.P. 1042.6(a) provides that the Prothonotary, upon praecipe of the defendant, shall enter a judgment of non pros against the plaintiff for failure to file a certificate of merit within the required time provided there is no pending timely filed motion seeking to extend the time to file the certificate. *Helfrick v. UPMC Shadyside Hospital*, 64 Pa. D. & C.4th 129 (Pa.Com.Pl.2003). This Court finds the reasoning and holding of the trial court in *Helfrick* to be persuasive.

Thereafter, the Plaintiff filed a Motion to Strike Praecipe for Entry of Judgment of Non Pros (Document No. 8), and the Defendant responded with a Brief in Opposition to Motion to Strike Praecipe for Entry of Judgment of Non Pros (Document No. 11).

The issue before the Court is whether the Defendant's Praecipe for Entry of Non Pros pursuant to Pa.R.Civ.P. 1042.3 and Pa.R.Civ.P. 1042.6 applies to the facts of the case *sub judice.*

## CHOICE OF LAW

██ Pursuant to the holding in *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in diversity must apply state substantive law and federal procedural law. *Chamberlain v. Giampapa,* 210 F.3d 154, 158 (3d Cir.2000). Importantly, this substantive/procedural dichotomy must be applied to ensure that the "outcome of the litigation in the federal court [will] be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust Co. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) (quoted in *Chamberlain,* 210 F.3d at 159).

The Third Circuit in *Chamberlain* clearly explicated the objectives served by this substantive/procedural dichotomy as follows:

This focus on whether application of a state rule will or may affect the outcome is intended to serve 'twin aims': 'discouragement of forum shopping and avoidance of inequitable administration of the laws.' *Hanna v. Plumer,* 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Accordingly, the outcome determinative test should not produce a decision favoring application of the state rule unless one of these aims will be furthered:

*Erie* and its progeny make clear that when a federal court sitting in a

diversity case is faced with a question of whether or not to apply state law, the importance of a state rule is indeed relevant, but only in the context of asking whether application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court.

*Hanna,* 380 U.S. at 468 n. 9, 85 S.Ct. 1136.

The Supreme Court has added two caveats to these *Erie* principles. First, even though application of the state rule may hold some potential for affecting the outcome, a strong countervailing federal interest will dictate recourse to the federal rule. *Byrd v. Blue Ridge Rural Electric Coop., Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). Second, the *Erie* rule may not be 'invoked to void a Federal Rule of Civil Procedure'. *Hanna,* 380 U.S. at 470, 85 S.Ct. 1136. Where a Federal Rule of Civil Procedure provides a resolution of an issue, that rule must be applied by a federal court sitting in diversity to the exclusion of a conflicting state rule so long as the federal rule is authorized by the Rules Enabling Act and consistent with the Constitution. *Id.*

Under *Hanna,* a federal court sitting in diversity first must determine whether a Federal Rule directly 'collides' with the state law it is being urged to apply. *Hanna,* 380 U.S. at 470–74, 85 S.Ct. 1136. If there is such a direct conflict, the Federal Rule must be applied if it is constitutional and within the scope of

the Rules Enabling Act. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 n. 7, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). If a 'direct collision' does *not* exist, then the court applies the *Erie* rule to determine if state law should be applied. *Hanna*, 380 U.S. at 470, 85 S.Ct. 1136. [emphasis in the original].

In deciding whether a Federal Rule 'directly collides' with a state law, the federal court sitting in diversity must consider whether the scope of the Federal Rule is 'sufficiently broad to control the issue before the Court,' *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), 'thereby leaving no room for the operation of [the state] law,' *Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1, 4–5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987). Although the Rules should be given their plain meaning and are not to be construed narrowly in order to avoid a direct collision, *see Walker*, 446 U.S. at 750 n. 9, 100 S.Ct. 1978, 'a broad reading that would create significant disuniformity between state and federal courts should be avoided if the text permits.' *Stewart Org., Inc. v. Ricoh*, 487 U.S. 22, 37–38, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). 'Federal courts have interpreted the Federal Rules, however, with sensitivity to important state interests and regulatory policies.' *Gasperini*, 518 U.S. at 427 n. 7, 116 S.Ct. 2211.

*Chamberlain*, 210 F.3d at 159–160.

In the case *sub judice*, the Defendant argues that pursuant to the holding in *Chamberlain*, Pennsylvania Rule of Civil Procedure 1042.3 should be applied to this diversity action as it does not collide with the federal rules, the state law is outcome determinative under *Erie*, and Pa.R.C.P. 1042.3 is a substantive rule. (Document No. 11).

Conversely, the Plaintiff asserts that the state rule is not applicable to this federal civil action as it is a rule of procedure. (Document No. 9). More specifically, the Plaintiff argues that Federal Rules of Civil Procedure 8 and 11 govern the case *sub judice*. *Id.* In the alternative, the Plaintiff asserts that he should have an opportunity to comply with Pa.R.C.P. 1042.3 if the Court determines that it applies to this civil action. *Id.*

## A. Chamberlain Decision

Initially, the Court addresses the Third Circuit's holding in *Chamberlain* as it applies to the case *sub judice*. In *Chamberlain*, the Third Circuit determined the following relevant issues: 1) whether the New Jersey affidavit of merit statute [5] can be properly applied by a federal court sitting in diversity; 2) if the New Jersey statute does apply in diversity actions,

---

**5.** The Third Circuit quoted the New Jersey affidavit of merit statute as follows:

[It] applies to medical malpractice causes of action that 'occur' on or after June 29, 1995, the effective date of the statute. It requires that the plaintiff file an affidavit of a licensed physician within 60 days of the date the answer is filed or face dismissal of the complaint. In the affidavit, the physician must state that a 'reasonable probability' exists that the care that is the subject of the complaint falls outside acceptable professional standards. N.J. Stat. Ann

§ sA:53A–27. In lieu of an affidavit, the plaintiff may provide a sworn statement that, after written request, the defendant failed to provide the plaintiff with records that have a substantial bearing on the preparation of the affidavit. N.J. Stat. Ann. § 2A:53A–28. Failure to provide either the affidavit or the sworn statement within 60 days, or 120 days if the court grants an extension for good cause, results in dismissal for 'failure to state a cause of action.' N.J. Stat. Ann. § 2A:53A–29.

*Chamberlain*, 210 F.3d at 157–158.

whether the plaintiff's complaint was properly dismissed with prejudice for failure to file an affidavit of merit; and 3) whether the district court erred in dismissing the entire complaint, when one or more of the alleged acts of negligence may have occurred before the effective date of the New Jersey affidavit of merit statute. *Chamberlain*, 210 F.3d at 157.

Based upon an analysis guided by *Erie* and *Hanna* principles, the Third Circuit determined that the New Jersey affidavit of merit statute did not conflict with Federal Rules 8 and 9 [6] as was argued by the plaintiff. *Chamberlain*, 210 F.3d at 159–160. Specifically, the Court held that Federal Rules 8 and 9 "dictate the content of the pleadings and the degree of specificity that is required", and the overall purpose of these rules "is to provide notice of the claims and defenses of the parties." *Id.* at 160. In contrast, the Court determined that the New Jersey affidavit of merit statute "has no effect on what is included in the pleadings of a case or the specificity thereof." *Id.* Moreover, the affidavit does not "contain a statement of the factual basis for the claim". *Id.* Instead, "[i]ts purpose is not to give notice of the plaintiff's claim, but rather to assure that malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings." *Id.* Accordingly, the Third Circuit held that no conflict existed between the New Jersey affidavit statute and the federal rules; therefore, it must next determine whether the "state

statute is outcome determinative on its face, and [the] failure to apply it would encourage forum shopping and lead to the inequitable administration of the law." *Id.* at 161.

Proceeding with the second part of the *Hanna* analysis, the Third Circuit concluded that the New Jersey statute was outcome determinative. Specifically, the Third Circuit determined that if the state statute was not applied to the facts of the case, then it would promote the "inequitable administration of the law." *Chamberlain*, 210 F.3d at 161. Consequently, the Court held that the New Jersey affidavit of merit statute was substantive state law which must be applied by the federal courts sitting in diversity. *Id.* Moreover, the Court did not "perceive [any] overriding federal interest" preventing the Court from applying the New Jersey statute. *Id.* Finally, the court determined that since the New Jersey statute required dismissal for failure to adhere to the statute, the "New Jersey legislature clearly intended to influence substantive outcomes." *Id.* Accordingly, the Third Circuit held that the New Jersey affidavit of merit statute was properly applied in the federal diversity action.

The second relevant issue addressed by the Third Circuit was whether the plaintiff's complaint was properly dismissed with prejudice for failure to file an affidavit of merit. Following the decision of the Supreme Court of New Jersey in *Corn-*

---

**6.** Federal Rule of Civil Procedure 8 provides in relevant part:

(a) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that

the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Fed.R.Civ.P. 8.

Federal Rule of Civil Procedure 9 requires that in certain factual circumstances, a pleading must be made with particularity. Among those circumstances contemplated in Rule 9, a professional negligence claim in not included as a situation requiring a pleading with particularity.

*blatt v. Barow,* 153 N.J. 218, 708 A.2d 401, 413 (1998), which held that " 'a dismissal for failure to comply with the [affidavit of merit] statute should be with prejudice in all but extraordinary circumstances' " *Chamberlain,* 210 F.3d at 162 (*quoting Cornblatt,* 708 A.2d at 413), the Third Circuit determined that no extraordinary circumstances existed in *Chamberlain* to warrant a reversal of the district court's decision to dismiss plaintiff's claims with prejudice. *Chamberlain,* 210 F.3d at 163. However, the Third Circuit also held that the district court's decision to dismiss was not error "at least with respect to the negligent acts that were alleged to have occurred after June 29, 1995, the effective date of the affidavit of merit statute." *Id.*

The third relevant issue decided by the Third Circuit was whether the district court erred in dismissing the entire complaint, when one or more of the alleged acts of negligence may have occurred before the effective date of the affidavit of merit statute. The Court reviewed the holding in *Cornblatt,* in which the Supreme Court of New Jersey declared that the language in the statute "does not apply to malpractice actions filed on or after the effective date of the statute if the facts giving rise to the malpractice complaint occurred before that date." *Cornblatt,* 708 A.2d at 406 (quoted in *Chamberlain,* 210 F.3d at 163). The statute provides that "[it] applies to medical malpractice causes of action that 'occur' on or after June 29, 1995, the effective date of the statute." N.J. Stat. Ann § sA:53A–27. Interpreting the word "occur" to have the same meaning as "accrue", the court in *Cornblatt* determined that the statute only applied to causes of action accruing on or after June 29, 1995. *Id.* at 408 (cited in *Chamberlain,* 210 F.3d at 163). Thus, the Third Circuit held that the plaintiff in *Chamberlain* did provide evidence that "pre-effective date malpractice occurred", and the case was

remanded for further proceedings for this claim only. *Chamberlain,* 210 F.3d at 164.

## B. Federal Rules of Civil Procedure

In the case *sub judice,* the Plaintiff argues that Pa.R.Civ.P. 1042.3 is distinguishable from the New Jersey affidavit statute for the following reasons: 1) Federal Rule of Civil Procedure 11 already provides for the requirement outlined in Pa.R.Civ.P. 1042.3 in which an attorney for the plaintiff must certify that the claim set forth is meritorious or face sanctions; 2) Federal Rule of Civil Procedure 8, which governs pleadings, already provides for the certificate of merit requirement promulgated in Pa.R.Civ.P. 1042.3 since Pa.R.Civ.P. 1042.3 is a pleading and not an affidavit like the New Jersey statute; 3) the Pennsylvania certificate of merit requirement is a rule of civil procedure promulgated by the Pennsylvania Supreme Court and not a statute enacted by Pennsylvania's legislature; and 4) the Pennsylvania certificate of merit requirement is procedural in nature and not substantive. (Document No. 9).

## 1. Federal Rule of Civil Procedure 11

The Plaintiff argues that Federal Rule of Civil Procedure 11 already provides that an attorney must sign a pleading that the claim set forth in the pleading is meritorious. Consequently, according to the Plaintiff, Pennsylvania Rule of Civil Procedure 1042.3 is "superfluous" in that the Federal Rules already require the plaintiff to certify his or her claim has merit. (Document No. 9).

Turning to the New Jersey District Court's analysis in *RTC Mortgage Trust v. Fidelity National Title Insurance Company,* 981 F.Supp. 334 (D.N.J.1997), a similar claim was raised by the plaintiff regarding the alleged conflict between the New Jersey affidavit of merit statute and the Federal Rule of Civil Procedure 11. More

specifically, the plaintiff argued that the New Jersey affidavit of merit statute "require[d] something that [was] not required by Rule 11, and therefore, conflicts with Rule 11." *RTC Mortgage Trust,* 981 F.Supp. at 345. However, the court concluded that the New Jersey affidavit of merit statute did not conflict with Rule 11 for the following reasons:

First, the Affidavit of Merit statute requires that a plaintiff consult with an 'appropriate licensed person' basically an expert, at some point within 60 days of the filing of the answer. [citations omitted]. Rule 11 neither demands nor regulates consultation with an expert, and requires that an *attorney,* not necessarily an expert, conduct a reasonable inquiry into the law and facts *before* filing a complaint. [citations omitted]. [emphasis in original].

Second, the Affidavit of Merit statute mandates that failure to consult with and provide an affidavit from an expert 'shall be deemed a failure to state a cause of action.' [citations omitted]. Rule 11, on the other hand, makes sanctions discretionary.

Third, failure to file an affidavit or otherwise comply with the Affidavit of Merit statute results in dismissal of the action, whereas, Rule 11 allows substantial discretion in fashioning sanctions, and the dismissal of an action is a sanction of last resort. [citations omitted].

Fourth, Rule 11 specifically allows room for operation of other statutes which may require an affidavit. [citations omitted]. In short, the Court finds that Rule 11 and N.J.S.A. § 2A:53A–27 'can exist side by side, . . . each controlling its own intended sphere of coverage without conflict.' [citations omitted].

*RTC Mortgage Trust,* 981 F.Supp. at 345–346.

In the case *sub judice,* the Pennsylvania Certificate of Merit Rule, 1042.3, also re-

quires that a plaintiff provide a written statement by "an appropriate licensed professional" that a "reasonable probability" exists that a "licensed professional deviated from an acceptable professional standard". Pa.R.Civ.P. 1042.3. In addition, Pa.R.Civ.P. 1042.3 requires that the certificate of merit be filed within 60 days of the filing of the complaint. By contrast, as the court noted in *RTC Mortgage Trust,* Rule 11 does not require consultation with an expert or a separate written statement within 60 days of filing the complaint. Rule 11 states "except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit." *See also RTC Mortgage Trust,* 981 F.Supp. at 345. Indeed, Rule 11 only requires consultation with an attorney while the Pennsylvania Certificate of Merit Rule 1042.3 requires a written statement of an appropriate licensed professional who will usually be a physician.

If a plaintiff does not file a certificate of merit pursuant to Pa.R.Civ.P. 1042.3, then Pa.R.Civ.P. 1042.6 provides that an entry of judgment of non pros may be entered against the plaintiff for failure to file the certification. Conversely, Rule 11 does not mandate the dismissal of a plaintiff's claim for failure to consult with an attorney. Rule 11 does, however, provide for discretionary sanctions regarding the plaintiff's violation of this Federal Rule of Civil Procedure. Indeed, the dismissal of an action under Rule 11 is "a sanction of last resort", *RTC Mortgage Trust,* 981 F.Supp. at 346, whereas Pa.R.Civ.P. 1042.6 requires dismissal.

■ The Court agrees with the court's analysis in *RTC Mortgage Trust* in determining that the Federal Rule of Civil Procedure 11 can co-exist with a state affidavit of merit statute since each rule "control[s] its own intended sphere of coverage with-

out conflict." *RTC Mortgage Trust,* 981 F.Supp. at 346. Additionally, the Court finds that the Pa.R.Civ.P. 1042.3 is not a "superfluous" rule since its promulgation was specifically intended to ferret out claims lacking merit in the interest of preserving judicial resources and promoting judicial economy. *See section 2, infra.* The Court therefore determines that Federal Rule of Civil Procedure 11 does not conflict with Pa.R.Civ.P. 1042.3.

## 2. Federal Rule of Civil Procedure 8

Next, the Court responds to the Plaintiff's argument that Federal Rule of Civil Procedure 8 already governs pleadings in the federal judiciary; therefore, Pa. R.Civ.P. 1042.3 "collides" with Rule 8 because Pa.R.Civ.P. 1042.3 sets forth additional requirements for pleading a professional negligence claim. While the Plaintiff is correct in asserting that Rule 8 governs the content of pleadings in federal actions, the Court determines that the purpose of Rule 8 does not collide with, and is distinct from, the overall purpose of Pa.R.Civ.P. 1042.3.

The purpose of Rule 8 is "to provide notice of the claims and defenses of the parties." *Chamberlain,* 210 F.3d at 160. In order to achieve this aim, Rule 8 does not have a specific timing requirement within which a party must file a pleading. *See RTC Mortgage Trust,* 981 F.Supp. at 344; *see also Teel v. United Tech. Pratt & Whitney,* 953 F.Supp. 1534, 1539 (S.D.Fla. 1997). Alternatively, Pa.R.Civ.P. 1042.3 requires that the certificate of merit "shall be file[d] with the complaint or within sixty days after the filing of the complaint". Pa.R.C.P. 1042.3(a); see *Speicher v. Toshok,* 63 Pa. D. & C.4th 435, 441 (Pa.Com. Pl.2003). Despite the differences in the timing requirement under each rule, the Court observes that the timing of the submission of the certificate of merit statute and the original complaint suggests that the certificate of merit statute is related to the pleading requirement under Rule 8. *See RTC Mortgage Trust,* 981 F.Supp. at 343; *see also Boone v. Knight,* 131 F.R.D. 609 (S.D.Ga.1990). However, the timing component under each rule is merely one factor to be considered in the Court's analysis of whether Pa.R.Civ.P. 1042.3 collides with Rule 8.

The Court must also consider whether the content of the certificate of merit is similar to or different from the content required under Rule 8. For example, Rule 8 sets requirements with regard to the content which must be provided in a pleading and the degree of specificity that is required in the pleading. *Chamberlain,* 210 F.3d at 160. Notably, Rule 8 provides for "notice pleading" whereby a claim must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief". Fed.R.Civ.P. 8(a)(2); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). This simplified notice pleading standard is applicable under the Federal Rules of Civil Procedure and relies on liberal discovery rules. *See generally Swierkiewicz, supra.*

Comparatively, Pa.R.Civ.P. 1042.3 does not require the plaintiff to set forth any factual averments upon which a claim is based. Rather, Pa.R.Civ.P. 1042.3(a)(1) dictates that a "written statement [must be filed] that there exists a reasonable probability" that the defendant's care, skill, or knowledge fell outside acceptable professional standards. "The attorney's signature certifies that an appropriate licensed professional has supplied a written statement that there is a basis to conclude that the care, skill, or knowledge exercised or exhibited by the defendant in the treatment, practice, or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the

harm." Pa.R.Civ.P. 1042.3(a)(1). Thus, the purpose of Pa.R.Civ.P. 1042.3 is to ensure that professional negligence claims are meritorious, and the certificate of merit requirement prevents needless waste of judicial time and resources which would otherwise be spent on non-meritorious claims. Consequently, the certificate of merit does not have any "effect on what is included in the pleadings of a case or the specificity thereof."[7] *Chamberlain*, 210 F.3d at 160. Accordingly, the Court determines that the content and degree of specificity required under each statute are unrelated both mechanically and functionally.

■ The Court concludes that Pa. R.Civ.P. 1042.3 does not interfere with the pleading standards promulgated under Fed.R.Civ.P. 8. More specifically, the Court finds that Pa.R.Civ. P. 1042.3 does not require a pleading of evidence; it does not require the court's evaluation of evidence; nor does it "affect, limit, or impact the content or timing of pleadings in federal court". *RTC Mortgage Trust*, 981 F.Supp. at 344. Thus, the Court determines that although a certificate of merit must be filed for a professional negligence claim or the claim will be dismissed, reduced to its fundamental purpose, Pa. R.Civ.P. 1042.3 is not a pleading. Accordingly, Rule 8 and Pa.R.Civ. P. 1042.3 may co-exist, and Pa.R.Civ.P. 1042.3 is properly applicable under an *Erie* and *Hanna* analysis.

### 3. Procedural Rule or Substantive Rule

■ The Third Circuit held in *Chamberlain* that where no conflict existed between the New Jersey affidavit statute and the federal rules, it must next determine whether the "state statute is outcome determinative on its face, and [the] failure to apply it would encourage forum shopping and lead to the inequitable administration of the law." *Chamberlain*, 210 F.3d at 161. If a state statute is outcome determinative, then the state law is substantive in nature, and the substantive state law must be applied by the federal courts sitting in diversity. *Chamberlain*, 210 F.3d at 161.

■ In the case *sub judice*, the Court determines that the failure to apply Pa. R.Civ.P. 1042.3 would "have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court." *Hanna*, 380 U.S. at 468 n. 9, 85 S.Ct. 1136. Furthermore, the Court does not perceive any overriding federal interest preventing the Court from applying the Pennsylvania statute. Finally, the Court determines that since the Pennsylvania statute requires dismissal for failure to adhere to the statute, the Pennsylvania legislature clearly intended to influence substantive outcomes. Accordingly, the Court determines that the Pennsylvania certificate of merit statute may be properly applied in this federal diversity action.

### 4. Separation of Powers

Next, the Plaintiff argues that Pa. R.Civ.P. 1042.3 is a rule of civil procedure promulgated by the Pennsylvania Supreme Court; thus, to hold that it is substantive law "would be [to invade] the province of the legislature [of Pennsylvania]". (Document No. 9). However, the Court disagrees with the Plaintiff's analysis, and the

---

7. The Court observes that the content required pursuant to Pa.R.Civ.P. 1042.3 is similar to that which is required under the New Jersey Affidavit of Merit statute, N.J.S.A. § 2A:53A–27, cited in *RTC Mortgage Trust*, 981 F.Supp. at 343–344. Accordingly, the Court disagrees with the Plaintiff's argument that Pa.R.Civ.P. 1042.3 is similar to the Georgia statute held to be in conflict with Rule 8 in *Boone v. Knight*, 131 F.R.D. 609 (S.D.Ga. 1990).

Court determines that Pa.R.Civ.P. 1042.3 could be substantive for diversity purposes, while still remaining "within the rule-making power of the Pennsylvania Supreme Court". *Bullins v. City of Philadelphia*, 516, F.Supp. 728, 730 (D.C.Pa. 1981).

Recalling the *Erie* and *Hanna* principles, the "purposes of the *Erie* doctrine are to end discrimination against citizens by non-citizens and to discourage forum shopping." *Hanna*, 380 U.S. at 467, 85 S.Ct. 1136 (quoted in *Bullins*, 516 F.Supp. at 730). Thus, a court sitting in diversity must engage in an analysis predicated upon *Erie* and *Hanna* principles to determine whether a rule must be applied in the federal courts. Consequently, a state rule of procedure may impact the rights of citizens such that the court sitting in diversity determines the state rule promulgated by the state supreme court is substantive in its effect. However, an important distinction exists between the considerations that a state supreme court takes into account in assessing its constitutional power to enact the state procedural rule, and the considerations that a federal court "must weigh in determining whether *Erie* mandates application of state law." *Jarvis v. Johnson*, 668 F.2d 740, 747 (3d Cir.1982). Professor Wright has written on the aforementioned distinction as follows:

> A particular issue may be classified as substantive or procedural in determining whether it is within the scope of a court's rulemaking power, or in resolving questions of conflict of laws, or in determining whether to apply state law or federal law. These are three very different kinds of problems. Factors that are of decisive importance in making the classification for one purpose may be irrelevant for another. To use the same name for all three purposes is an invitation to a barren and misleading conceptualism by which a decision holding that a particular issue is substantive for one of these purposes would be thought controlling authority when classification for a different purpose is involved.

C. Wright, Handbook of the Law of Federal Courts s 59 at 272 (3d ed.1976) (quoted in *Jarvis*, 668 F.2d at 747).

■ In the case *sub judice*, the Court determines that the Pennsylvania Supreme Court's authority under the state constitution to issue only procedural rules "which do not abridge, enlarge, or modify substantive rights of any litigant," *Bullins*, 516 F.Supp. at 730, is not in conflict with this Court's recognition that a state rule of law may be substantive under *Erie* and *Hanna* principles. Indeed, this Court's determination that the failure to apply Pa.R.Civ.P. 1042.3 in the case *sub judice* would promote the inequitable administration of justice and promote forum-shopping is a classification that when drawn for this Court's particular purpose, cannot be considered controlling authority for all other intents. Accordingly, the Court disagrees with the Plaintiff and concludes that this Court is not trespassing on the authority of the Pennsylvania Supreme Court, and neither are we misconstruing the power of that court only to issue procedural rules.

### C. Pa.R.Civ.P. 1042

Pa.R.Civ.P. 1042.1 *et seq.* "were designed and adopted to directly confront the crisis surrounding medical malpractice claims in this Commonwealth." *Hoover v. Davila*, 64 Pa. D. & C.4th 449, 455–56 (Pa.Com.Pl.2003). To further this end, Pa. R.Civ.P. 1042.3 requires a plaintiff to file a certificate of merit verifying that a licensed professional has determined that a reasonable probability exists that a licensed professional did deviate from the requisite standard of care with regard to the plaintiff. However, where a plaintiff fails to file a certificate of merit within the

allotted time, a defendant may file a praecipe of non pros which dismisses the plaintiff's claim for failure to file a certificate of merit. Pa.R.Civ.P. 1042.6; *Hoover v. Davila*, 64 Pa. D. & C.4th 449 (Pa.Com.Pl. 2003) (holding that Pa.R.Civ.P. 1042.6(a) is "clear and concise" in that if the defendant "files a praecipe after the required time and prior to the filing of the certificate of merit, the prothonotary is required to enter the judgment of non pros".)

In the case *sub judice*, the Defendant filed a Praecipe for Entry of Non Pros against the Plaintiff for failure to file a certificate of merit. (Document No. 7). The Defendant filed the praecipe approximately 64 days after the Plaintiff filed his complaint.[8] Approximately six days later, the Plaintiff filed a Motion to Strike the Praecipe for Entry of Non Pros, along with a certificate of merit. (Document No. 8).

■ The Court must determine whether the Defendant is entitled to an entry of a judgment of non pros. Recalling the language in Pa.R.Civ.P. 1042.6(a), it clearly states that "[t]he prothonotary, on praecipe of the defendant shall enter a judgment of non pros against the plaintiff for failure to file a certificate of merit within the required time provided that there is no pending timely filed motion seeking to extend the time to file the certificate." The court in *Hoover* interpreted this language to leave "no room in this rule for discretion" by the courts. *Hoover*, 64 Pa. D. & C.4th at 455. In other words, unless the plaintiff has filed a motion for extension of time within the allotted sixty days within which to file the certificate of merit, the court cannot open a judgment of non pros for "reasonable explanations or legitimate excuse for inactivity or delay ...." Pa. R.Civ.P. 3051; *Hoover*, 64 Pa. D. & C.4th

at 455 (stating that Pa.R.Civ.P. 3051 which "applies to the opening of judgments for 'reasonable explanation or legitimate excuse for the inactivity or delay ....' does not apply to an entry of a judgment of non pros under Pa.R.Civ.P. 1042.6(a).) This Court finds the reasoning of the state trial court in *Hoover* to be persuasive.

In the case *sub judice*, the Plaintiff did not file a motion to extend time within which to file a certificate of merit. The Court determines that pursuant to the language of Pa.R.Civ.P. 1042.6(a), Plaintiff's Motion to Strike the Praecipe for Entry of Non Pros cannot be granted as the Plaintiff did not meet the requirements outlined in Pa.R.Civ.P. 1042.3. Furthermore, the Court notes that according to the holding in *Helfrick*, *supra*, where the sixty day time period had elapsed, and the Defendant filed a Praecipe for Entry of Non Pros prior to the Plaintiff filing a certificate of merit, the Defendant's Praecipe shall prevail as it was filed first in time.

The Court also observes that pursuant to the holding in *Helfrick*, *supra*, the Plaintiff would have been permitted to refile his claim if the statute of limitations had not expired. *See also Bucci v. Detroit Fire & Marine Insurance Co.*, 109 Pa.Super. 167, 167 A. 425 (1933); *Haefner v. Sprague*, 343 Pa.Super. 342, 494 A.2d 1115 (1985); and *Hatchigian v. Koch*, 381 Pa.Super. 377, 553 A.2d 1018 (1989). However, pursuant to 42 Pa.C.S.A. § 5533(b)(1)(i) the Plaintiff's cause of action accrued on his birthday, November 6, 2001, when he reached the age of a majority. Accordingly, the two-year statute of limitation within which to bring a claim against the Defendant expired on November 6, 2003. 42 Pa.C.S.A. § 5524. Thus, it appears that if Pa.R.Civ.P. 1042.3 applies to the facts of the case *sub judice*, then the

---

8. The Plaintiff's complaint was filed on October 20, 2003, (Document No. 1), and the Defendant's Praecipe for Entry of Non Pros was filed on December 24, 2003, (Document No. 7).

Plaintiff's cause of action would be dismissed for a failure to file a certificate of merit, and the Plaintiff would be denied the opportunity to comply with Pa.R.Civ. 1042.3. However, the Court notes and will follow the Third Circuit's reasoning in *Chamberlain* that the following issue also is to be evaluated: whether a statute applies to pre-effective date causes of action.

## D. Pre–Statute Claims

In *Chamberlain*, the Third Circuit held that pursuant to the language in the New Jersey affidavit of merit statute [9], causes of action accruing prior to the effective date of the statute were not to be dismissed for failure to file an affidavit of merit. Similarly, this Court must determine whether the language of Pa.R.Civ.P. 1042.3 applies to the Plaintiff's claims in the case *sub judice*, or whether such claims accrued prior to the effective date of the rule.

The language provided in the notes of Pa.R.Civ.P. 1042.3 states the following: "Adopted Jan. 27, 2003, imd. effective." Compared to the New Jersey statute in *Chamberlain*, the Pennsylvania statute does not clearly state whether facts giving rise to a cause of action which occurred before the effective date of the statute are bound by the requirements of the statute. Consequently, assuming arguendo the existence of a legally enforceable right which antedated the Pennsylvania Supreme Court rule, the Court must evaluate whether the rule, if applied retroactively, was intended so as to bar the right. Thus, the Court looks to the rules of construction for rules of civil procedure.[10]

---

9.  The language included in N.J. Stat. Ann. § 2A:53A–27 provides:

    This act shall take effect immediately [June 29, 1995] and shall apply to causes of action which occur on or after the effective date of this act." Affidavit of Merit Bill, Act of June 29, 1995, ch. 139, § 5, 1995 N.J. Laws 457 (cited in *Chamberlain*, 210 F.3d at 158).

    The Third Circuit in *Chamberlain* also determined that pursuant to the Supreme Court of New Jersey's holding in *Cornblatt v. Barow*, 153 N.J. 218, 708 A.2d 401 (1998), the term "occur" within the statute has the same meaning as "accrue", "so that the statute only applies to causes of action which accrue on or after June 29, 1995." *Chamberlain*, 210 F.3d at 163 (citing *Cornblatt*, 708 A.2d at 408).

10.  In a recent decision, *In re 2003 General Election for Office of Prothonotary*, 849 A.2d 230 (Pa.2004), the Pennsylvania Supreme Court determined that electors who signed a candidate's nine petitions to open ballot boxes were required to verify the petitions by means of an oath or affirmation before a notary or other public official, and the failure to do so would render the petitions invalid. In its analysis, the court was required to interpret the meaning of the word "verified". *Id.* at 237. The court determined the following:

    In determining the meaning of the term 'verified' for purposes of [Election Code] section 1701, the lower courts looked solely to the definitions for 'verified' provided in the Judicial Code and the Rules of Civil Procedure. However, the Judicial Code and the Rules of Civil Procedure are only meant to apply to those statutory provisions or rules promulgated, respectively, as part of the Judicial Code or Rules of Civil Procedure. See 42 Pa.C.S. § 102 ('the following words and phrases *when used in this title* shall have ... the meanings given to them in this section') (emphasis added); Pa. R.C.P. 76 ('[t]he following words and phrases *when used in any rule promulgated by the Supreme Court* ... shall have the following meanings'). In contrast, the Statutory Construction Act is meant to apply to '*any* statute finally enacted on or after September 1, 1937,' such as the Election Code, unless the context of the statutory provisions at issue 'clearly indicates otherwise.' 1 Pa.C.S. § 1991 (emphasis added). Therefore, unlike the lower courts, we find that we need to look to the Statutory Construction Act to determine the meaning of the term 'verified.'

    *Id.* at 237. Accordingly, this Court observes the important distinction between construction of a statute pursuant to the Statutory Construction Act and construction of a rule

### 1. Rules of Construction for Rules of Civil Procedure

This Court's duty is to grant "the language utilized by the Supreme Court its plain meaning." Pa.R.Civ.P. 127(b); (cited in *Christo v. Tuscany, Inc.*, 368 Pa.Super. 9, 533 A.2d 461, 464 (1987)). Accordingly, the Court construes the rule to require a claimant to file a written statement signed by an appropriate licensed professional stating that a reasonable probability exists that the defendant's care, skill, or knowledge fell outside acceptable professional standards. Pa.R.Civ.P. 1042.3(a)(1). The rule further provides that a "separate certificate of merit shall be filed as to each licensed professional against whom a claim is asserted." Pa.R.Civ.P. 1042.3(b). Additionally, the court "upon good cause shown, shall extend the time for filing a certificate of merit not to exceed sixty days." Pa.R.Civ.P. 1042.3(d). However, the "motion to extend the time for filing a certificate of merit must be filed on or before the filing date that the plaintiff seeks to extend." *Id.* Consequently, the Court finds that the rule is clear and concise as to the requirements imposed upon the claimant; however, the rule does not include language with regard to whether it applies to facts giving rise to a cause of action occurring before the effective date of the rule. Indeed, even the notes to Pa.R.Civ.P. 1042.3 do not provide any language to that effect.[11] Thus, although the Court deems the plain meaning of the rule to be unambiguous as to its requirements, further analysis as to whether the Pennsylvania Supreme Court intended the rule to apply retroactively must be made in accordance with the rules of construction set forth in Pa.R.Civ.P. 127.

Rule 127 provides the following:

### Rule 127. Construction of Rules. Intent of Supreme Court Controls

(a) The object of all interpretation and construction of rules is to ascertain and effectuate the intention of the Supreme Court.

(b) Every rule shall be construed, if possible, to give effect to all its provisions. When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of a rule are not explicit, the intention of the Supreme Court may be ascertained by considering, among other matters (1) the occasion and necessity for the rule; (2) the circumstances under which it was promulgated; (3) the mischief to be remedied; (4) the object to be attained; (5) the prior practice, if any, including other rules and Acts of Assembly upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous history of the rule; and (8) the practice followed under the rule.

Pa.R.Civ.P. 127. Thus, when a rule, such as Rule 1042.3, is not explicit regarding retroactive application, a court may consider those matters listed in Rule 127(c).

Clearly, one of the occasions and necessities achieved in promulgating Rule 1042.3 is to ensure that a claimant has

---

pursuant to both the Rules of Civil Procedure and the intent of the Supreme Court of Pennsylvania.

**11.** The Court observes that when construing rules of civil procedure, a note should be used "unless it is not possible to give effect to both the note and the rule. Pa.R.Civ.P. 129(e) ('A note to a rule or an explanatory comment is not a part of the rule but may be used in construing the rule.')". *Helfrick*, 64 Pa. D. & C.4th at 132; see also *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 59, 436 A.2d 147, 151 (1981) (holding that explanatory notes "indicate the spirit and motivation behind the drafting of the rule, and they serve as guidelines for understanding the purpose for which the rule was drafted").

some basis to support an action of professional liability. See Pa.R.Civ.P. 127(c)(1); *Mancini v. Yavorek,* 61 Pa. D & C.4th 1, 11 fn. 5 (Pa.Com.Pl.2003). In other words, filing a certificate of merit makes certain that there is a viable allegation against a professional, such as a medical care provider.

The certificate of merit requirement adopted by the Pennsylvania Supreme Court was also implemented as part of a procedural mechanism designed to address other concerns of the Court. For example, Rule 1042.5, another procedural safeguard adopted by the Pennsylvania Supreme Court, addresses discovery in professional liability claims, and the necessity of filing a certificate of merit: "Except for the production of documents and things or the entry upon property for inspection and other purposes, a plaintiff who has asserted a professional liability claim may not, without leave of court, seek any discovery with respect to that claim prior to the filing of a certificate of merit." Rule 1042.5. The purpose in adopting Rule 1042.3 and Rule 1042.5 has been interpreted as "minimiz[ing] the costs of defense and time that a licensed professional must devote to the litigation until the plaintiff has been able to secure a certificate of merit." *Speicher v. Toshok,* 63 Pa.D. & C.4th 435, 442 (Pa.Com.Pl.2003). Thus, this Court determines that the clear intent of the Supreme Court in adopting 1042.3 is to ensure the viability of a professional liability claim and to minimize the costs and time a licensed professional may have to incur and devote during the early stages of litigation.[12]

The Court also observes that other rules and Acts of Assembly were occurring upon similar subjects during the same time that the Pennsylvania Supreme Court adopted the new procedural Rules at Pa.R.Civ.P. 1042.1–1042.8, governing all professional liability actions. Specifically, the civil rules or procedure for venue in a medical negligence action at Pa.R.Civ.P. 1006[13] were "amended along with the statutory changes embodied in the Medical Care Availability and Reduction of Error (MCARE) Act, to go into effect concurrently with the MCARE Act and reflect the same intent as the General Assembly". *Olshan v. Tenet Health System City Avenue, LLC,* 849 A.2d 1214, 1216 (Pa.Super.2004). Indeed, the venue rule of civil procedure "refer[s] back to specific sections of MCARE for both definitions and general rules." *Id.* Thus, the Supreme Court of Pennsylvania, which has the sole responsibility for the promulgation of rules of civil procedure, such as venue, has adopted the same rules as promulgated by the General Assembly of Pennsylvania with regard to venue rules and the MCARE Act. *Olshan,* 849 A.2d at 1216.

---

**12.** Minimizing costs for a claimant is another concern addressed generally by Rule 1042 *et seq.* According to Introductory Comment of 1 West's Pa. Forms, Civil Procedure § 14.0, crystalizing the issues early in a professional liability claim may serve to prepare the claimant:

> Professional malpractice cases typically involve technical issues which must be resolved by the fact finder, making expert testimony essential in such cases. In addition to its bearing on whether the defendant's conduct was negligent, such testimony is needed to establish that the injury in question in the case of a medical malpractice claim did, to a reasonable degree of medical certainty, stem from the negligent act alleged. Similar reasoning applies to any of the areas of professional negligence included in this chapter. Consultation with an expert is therefore necessary at the earliest stages of a professional negligence case to assist in the initial case evaluation and to help prepare the theory or theories of liability upon which suit will be based.

Introductory Comment of 1 West's Pa. Forms, Civil Procedure § 14.0 (2004).

**13.** See fn. 1, *supra.*

Accordingly, the inference can be made that both the Supreme Court of Pennsylvania and the General Assembly were attempting to affect the same, or similar, changes with regard to medical liability claims.

The intent of the General Assembly with regard to new MCARE rules has been declared as follows:

> The General Assembly further recognizes that recent changes in the health care delivery system have necessitated a revamping of the corporate structure for various medical facilities and hospitals across this Commonwealth. This has unduly expanded the reach and scope of existing venue rules. Training of new physicians in many geographic regions has also been severely restricted by the resultant expansion of venue applicability rules. These physicians and health care institutions are essential to maintaining the high quality of health care that our citizens have come to expect.

40 P.S. § 1303.514(a). Declaration of policy (quoted in *Olshan*, 849 A.2d at 1217–1218). Additionally, the General Assembly "has recognized that health care in the Commonwealth was becoming controlled by larger entities such as Tent Health Systems, the University of Pennsylvania, Thomas Jefferson University, Einstein Hospital, the University of Pittsburgh Medical Center, and West Penn Allegheny Health System." *Olshan*, 849 A.2d at 1218. Consequently, "any health care provider affiliated with any of these larger corporate entities became fair game to be sued in Philadelphia or Pittsburgh, where the vast majority of corporate entities have their main location or conduct a large amount of business." *Id.* As a result, an "'unduly expanded' reach and scope of venue" occurred. *Id.* In response, the General Assembly and the Supreme Court of Pennsylvania revised pertinent venue sections to "alleviate this situation by limit-ing venue to the location of the alleged negligent care." *Id.* See Pa.R.Civ.P. 1006 and 42 Pa.C.S.A. § 5101.1.

In conjunction with the venue procedural changes, and in conjunction with the new MCARE rules, the Supreme Court of Pennsylvania added Pa.R.Civ.P. 1042.3, requiring a certificate of merit to be filed. *Olshan*, 849 A.2d at 1218. The certificate of merit must be filed for any claim against a licensed professional, such as a doctor. However, "no such certificate is required for allegations made against the hospital or other corporate entity." *Id.* Accordingly, the Court notes that the implications of the new venue rules and the certificate of merit rule are twofold: (1) "the site of the alleged negligent treatment ...is the driving force behind the changes" found in Pennsylvania Rules of Civil Procedure; and (2) the Pennsylvania Supreme Court intended to provide a licensed professional with the "procedural protection of a certificate of merit and the change in venue rules". *Id.*

Recalling the aforementioned intentions of the Supreme Court in adopting 1042.3 to ensure the viability of a professional liability claim and to minimize costs a licensed professional may have to incur during the early stages of litigation, the Court recognizes the procedural protections afforded to licensed professionals under Rule 1042.3 and now turns to an analysis of the consequences of applying Rule 1042.3 retroactively and thereby barring a legally enforceable right which antedated the Pennsylvania Supreme Court rule.

Initially, the Court observes that in ascertaining the intent of the Supreme Court of Pennsylvania, it is presumed that the court "does not intend a result that is absurd." Pa.R.Civ.P. 128(a). Thus, if the Plaintiff had brought the claim during the period of 1997 through 1999 [14], the Plaintiff would not have been required to file a certificate of merit, as the rule became

---

14. If the Plaintiff was not a minor at the time    of the alleged negligence, then the two year

effective in January of 2003. The Plaintiff's right to seek redress for the alleged professional negligence would not have been barred for the failure to file the certificate of merit.

■ Having brought the professional negligence claim in the year 2004, the Plaintiff now faces dismissal of his claim under Rule 1042.3. The Court observes, however, if the Court were to apply Rule 1042.3 retroactively to Plaintiff's cause of action, which arose approximately five and one-half years ago, then the Court would be expanding the protection provided to licensed professionals beyond the scope explicitly stated in Rule 1042.1 et seq. Indeed, the Court recognizes that one of the occasions for adopting Rule 1042.1 et seq. was a response to an evolving corporate medical environment. Thus, to apply today's procedural protections to licensed

professionals who were operating under circumstances that existed five years ago would obviate the necessity for the rule as implemented by the Pennsylvania Supreme Court, as well as similar statutes enacted by the General Assembly. In other words, to apply Rule 1042.3 retroactively would be to suggest that the need for such procedural protections existed then as they do today; however, such logic is counterintuitive to the necessities underlying the implementation of the rule: a shifting corporate medical environment; restricted training for medical professionals as a consequence of expanding venue rules; and the increased need to ensure the viability of professional liability claims. Accordingly, the Court will not broaden the procedural protections adopted by the Pennsylvania Supreme Court to bar a legally enforceable right which antedated the Pennsylvania Supreme Court rule.[15]

statute of limitations would have expired in 1999.

**15.** Alternatively, if the Court were to interpret Pa.R.Civ.P. 1042.3 pursuant to the rules of construction under Section 56 of the Statutory Construction Act of May 28, 1937, P.L. 1019, sec. 56, 46 P.S. § 556, this Court finds that it would reach the same determination.

Pursuant to Section 56 of the Statutory Construction Act of May 28, 1937, P.L. 1019, sec. 56, 46 P.S. § 556, the underlying policy regarding retroactivity is declared as follows: "No law shall be construed to be retroactive unless clearly and manifestly so intended by Legislature." Quoted in Hoffman v. Misericordia Hospital of Philadelphia, 61 Pa. D. & C.2d 358, 363 (1968). Additionally, the "underlying general principles of statutory construction have been restated many times." Hoffman, 61 Pa. D. & C.2d at 364. For example, in Barnesboro Borough v. Speice, 40 Pa. Superior Ct. 609, 612 (1909), the rules are stated as follows:

The general rule undoubtedly is that legislation which affects rights will not be construed to be retroactive unless it is explicitly so declared in the statute. But where it concerns merely the mode of procedure it is applied, as of course, to litigation existing at the time of its passage: Kille v. Reading

Iron–Works, 134 Pa. 225, 19 A. 547. Retrospective laws may be supported when they impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted: Shonk v. Brown, 61 Pa. 320. 'Retrospective laws generally, if not universally, work injustice, and ought to be so construed only when the mandate of the legislature is imperative:' Taylor v. Mitchell, 57 Pa. 209. 'There is no canon of construction better settled than this, that a statute shall always be interpreted so as to operate prospectively and not retrospectively unless the language is so clear as to preclude all question as to the intention of the legislature:' Neff's Appeal, 21 Pa. 243; McCabe v. Emerson, 18 Pa. 111. These well-settled principles have never been departed from and have been recognized and reaffirmed in a long line of cases: Smith v. Railroad Company, 36 Pa. Superior Ct. 584; Com v. Bessemer Company, 207 Pa. 302 [56 A. 871]; Horn & Brennan [Brannen] Mfg. Co. v. Steelman, 215 Pa. 187 [64 A. 409]; Lewis v. Pennsylvania Railroad Company, 220 Pa. 317 [69 A. 821]. The principle established by these decisions rules this case.

Furthermore, the Court perceives no clear intent expressed in Pa.R.Civ.P. 1042.3 that the rule is to be applied retroactively. Thus, the Court determines that Pa. R.Civ.P. 1042.3 does not apply to the Plaintiff's factual averments alleging pre-effective date professional negligence claims, and the Court denies the Defendant's Praecipe for Entry of Non Pros.

An appropriate order follows.

## ORDER

**AND NOW,** this 26th day of July, 2004, in consideration of Defendant's Praecipe for Entry of Non Pros, the Plaintiff's Motion to Strike Praecipe for Entry of Judgment of Non Pros, and the Defendant's Brief in Opposition to Motion to Strike Praecipe for Entry of Judgment of Non Pros, **IT IS HEREBY ORDERED** that Defendant's Praecipe for Entry of Non Pros is denied.

*Quoted in Hoffman,* 61 Pa. D. & C.2d at 364–365.

In addition, the Court observes that previous decisions have marked a distinction between retroactivity as it applies to procedural rather than substantive matters. For example, in *Seneca v. Yale & Towne,* 142 Pa. Superior Ct. 470, 16 A.2d 754 (1941), retroactivity was "determined to have been intended but the subject was a procedural matter". *Hoffman,* 61 Pa. D. & C.2d at 364. Also, retroactivity was applied where the statute was remedial or "curative and no previously existing legal right was abated or destroyed." *Id; see Malicks' Petition,* 137 Pa. Superior Ct. 139 [8 A.2d 494] (1939); *Woolworth Co. v. Pittsburgh,* 2 Pa.Cmwlth. 338, 284 A.2d 143 (1971).

Having already determined that Pa.R.Civ.P. 1042.3 is substantive in nature, *see section* B. 3., such that it applies in federal court under *Erie* and *Hanna* principles, the Court observes that to apply Pa.R.Civ.P. 1042.3 retroactively would extinguish a previously existing right. The Court also observes that the Plaintiff's right of action does not arise until the injury is sustained, not when the causes of the injury were originally set in motion. *Misitis v. Steel City Piping Co.,* 441 Pa. 339, 272 A.2d 883, fn. 1 (Pa.1971).